# EXHIBIT A

# Leon County Clerk of the Circuit Court and Comptroller
## Court Case Search

Full Case View 💬                                                    Print Page

| 37 2019 CA 001511 - LADELE, GREGORY A vs MHM HEALTH PROFESSIONALS LLC |
|---|

spCVWeb_parties 2939080

| Party Status | Party | Party Code | Attorney | Attorney Status |
|---|---|---|---|---|
| DISMISSED | CENTURION MANAGED CARE OF FLORIDA LLC DBA CENTURIO , | DEFENDANT | PRO SE | ACTIVE |
| | MHM HEALTH PROFESSIONALS LLC , | DEFENDANT | PRO SE | ACTIVE |
| DISMISSED | CENTURION MANAGED CARE OF FLORIDA LLC DBA CENTURIO , | DEFENDANT | RICHARD C MCCREA | ACTIVE |
| DISMISSED | CENTURION MANAGED CARE OF FLORIDA LLC DBA CENTURIO , | DEFENDANT | CATHERINE H MOLLOY | ACTIVE |
| DISMISSED | CENTURION MANAGED CARE OF FLORIDA LLC DBA CENTURIO , | DEFENDANT | CAYLA MCCREA PAGE | ACTIVE |
| | LADELE, GREGORY A | PLAINTIFF | MARIE A MATTOX | ACTIVE |

Top of Page

spCVWeb_disposition 2939080

| Action Dscr | Open/Reopen Status | Open/Reopen Date | Disposition | Disposition Date | Judge |
|---|---|---|---|---|---|
| OTHER DISCRIMINATION | OPEN | 6/27/2019 | | | DEMPSEY |

Top of Page

spCVWeb_ptychrg_summary 2939080

| Charge # | Action Code | Description | Plea Date | Plea | Decision Date | Court Action | Charge Disposition | Citation |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

Top of Page

spcvWEB_get_case_judge_history 2939080

| Judges Appearing on Case | | | |
|---|---|---|---|
| Last Name | First Name | Date Assigned | Source |
| DEMPSEY | ANGELA | 6/28/2019 5:21:11 PM | BM |

Top of Page

| Viewable On Request Statuses |
|---|

|  | Viewable on Request Documents |
|---|---|

spCVWeb_dockets_new 2939080

| Docket Table Headers Are Sortable. Click For Ascending, Again For Descending Order | | | | | | |
|---|---|---|---|---|---|---|
| Source Table Abbreviations: BM = Benchmark; JIS = Justice Informations System | | | | | | |
| Docket Date | CCISSeqNbr | Docket Code | Docket Text | OR Book | OR Page | Source |
| 6/27/2019 | 2 | CCS | CIVIL COVER SHEET | | | BM |

| | | | | |
|---|---|---|---|---|
| 6/27/2019 | 3 | COMP_CA_ | COMPLAINT | BM |
| 6/27/2019 | 4 | SUIS_ | SUMMONS ISSUED | BM |
| 6/28/2019 | 1 | a002 | JUDGE DEMPSEY, ANGELA C: ASSIGNED | BM |
| 6/28/2019 | 5 | RECEIPT_ | PAYMENT $410.00 RECEIPT #1439482 | BM |
| 9/17/2019 | 6 | MTDM_ | DEFENDANTS MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT | BM |
| 9/17/2019 | 7 | NAPR_ | NOTICE OF APPEARANCE FILED | BM |
| 9/17/2019 | 8 | NAPR_ | NOTICE OF APPEARANCE FILED | BM |
| 9/20/2019 | 9 | NAPR_ | NOTICE OF APPEARANCE FILED | BM |
| 9/20/2019 | 10 | NAPR_ | CORRECTED NOTICE OF APPEARANCE | BM |
| 10/16/2019 | 11 | NOH_ | NOTICE OF HEARING | BM |
| 10/17/2019 | 12 | a120 | MOTION HEARING SET FOR 01/16/2020 AT 10:00 AM IN 301E, JDG: DEMPSEY, ANGELA C | BM |
| 11/1/2019 | 13 | NOTO_ | NOTICE OF DISCLOSURE | BM |
| 11/21/2019 | 14 | NSOI_ | NOTICE OF SERVICE OF DEFENDANTS FIRST SET OF INTERROGATORIES TO PLAINTIFF GREGORY A. LADELE, D.O. | BM |
| 11/21/2019 | 15 | RQPR_ | DEFENDANT CENTURION OF FLORIDA, LLCS FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF GREGORY A. LADELE | BM |
| 1/13/2020 | 16 | NCNH_ | NOTICE OF CANCELLATION OF HEARING | BM |
| 1/14/2020 | 17 | EMAIL | EMAIL SENT TO JUDGE DEMPSEYS JA RE SERVICE OF COURT DOCUMENT � 2019 CA 001511, LADELE, GREGORY A VS. CENTURION MANAGED CARE OF FLORIDA LLC DBA CENTURIO WITH 1 ATTACHMENTS: NCNH-1/13/2020 | BM |
| 1/27/2020 | 18 | MEOT_ | PLAINTIFFS MOTION FOR EXTENSION OF TIME TO FILE AMENDED COMPLAINT IN RESPONSE TO DEFENDANTS MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT | BM |
| 1/31/2020 | 19 | AMCO_ | AMENDED COMPLAINT | BM |

Top of Page

spCVWeb_events 2939080

| Event | Date | Start | Location | Judge | Result | Source |
|---|---|---|---|---|---|---|
| MOTION HEARING | 1/16/2020 | 10:00 AM | 301E | DEMPSEY | CANCELLED | BM |
| MOTION HEARING | 10/16/2019 | 10:00 AM | 301E | DEMPSEY | RESCHEDULED - EVENT CORRECTION | BM |

Top of Page

spCVWeb_costs 2939080

| Docket Application | Owed | Paid | Dismissed | Due |
|---|---|---|---|---|
| COMPLAINT | $400.00 | $400.00 | $0.00 | $0.00 |
| SUMMONS ISSUED | $10.00 | $10.00 | $0.00 | $0.00 |

Top of Page

spCVWeb_arpty 2939080

| Ordered Amt | Paid | Ar Plan Dismissed | Balance | Delinquent |
|---|---|---|---|---|
| | | | | |

Top of Page

spCVWeb_arsched 2939080

Filing # 91791901 E-Filed 06/27/2019 02:35:48 PM

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law.  This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes.  (See instructions for completion.)

**I.     CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>SECOND</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>LEON</u>  COUNTY, FLORIDA

Case No.:  <u>2019 CA 001511</u>
Judge: _____

<u>GREGORY A LADELE</u>
Plaintiff

vs.

<u>CENTURION MANAGED CARE OF FLORIDA LLC dba CENTURIO</u>
Defendant

**II.     TYPE OF CASE**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
    ☐  Business governance
    ☐  Business torts
    ☐  Environmental/Toxic tort
    ☐  Third party indemnification
    ☐  Construction defect
    ☐  Mass tort
    ☐  Negligent security
    ☐  Nursing home negligence
    ☐  Premises liability – commercial
    ☐  Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐  Commercial foreclosure $0 - $50,000
    ☐  Commercial foreclosure $50,001 - $249,999
    ☐  Commercial foreclosure $250,000 or more
    ☐  Homestead residential foreclosure $0 – 50,000
    ☐  Homestead residential foreclosure $50,001 - $249,999
    ☐  Homestead residential foreclosure $250,000 or more
    ☐  Non-homestead residential foreclosure $0 - $50,000
    ☐  Non-homestead residential foreclosure $50,001 - $249,999

☐  Non-homestead residential foreclosure $250,00 or more
☐  Other real property actions $0 - $50,000
☐  Other real property actions $50,001 - $249,999
☐  Other real property actions $250,000 or more

☐  Professional malpractice
    ☐  Malpractice – business
    ☐  Malpractice – medical
    ☐  Malpractice – other professional
☒  Other
    ☐  Antitrust/Trade Regulation
    ☐  Business Transaction
    ☐  Circuit Civil - Not Applicable
    ☐  Constitutional challenge-statute or ordinance
    ☐  Constitutional challenge-proposed amendment
    ☐  Corporate Trusts
    ☒  Discrimination-employment or other
    ☐  Insurance claims
    ☐  Intellectual property
    ☐  Libel/Slander
    ☐  Shareholder derivative action
    ☐  Securities litigation
    ☐  Trade secrets
    ☐  Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.    **REMEDIES SOUGHT** (check all that apply):
   ☒   Monetary;
   ☒   Non-monetary declaratory or injunctive relief;
   ☒   Punitive

IV.    **NUMBER OF CAUSES OF ACTION:** (     )
   (Specify)

   <u>1</u>

V.    **IS THIS CASE A CLASS ACTION LAWSUIT?**
   ☐   Yes
   ☒   No

VI.    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
   ☒   No
   ☐   Yes – If "yes" list all related cases by name, case number and court:

VII.    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
   ☒   Yes
   ☐   No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature <u>s/ Marie A Mattox</u>      FL Bar No.: <u>739685</u>
   Attorney or party                                         (Bar number, if attorney)

<u>Marie A Mattox</u>      <u>06/27/2019</u>
   (Type or print name)                              Date

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT IN AND
FOR LEON COUNTY, FLORIDA

GREGORY A. LADELE, D.O.,

    Plaintiff,

v.

CENTURION MANAGED CARE OF
FLORIDA, LLC. D/B/A CENTURION,
LLC,

    Defendant.

CASE NO. : 19-CA-
FL BAR NO.: 0739685

_____/

## COMPLAINT

Plaintiff, GREGORY A. LADELE, D.O. ("Dr. Ladele"), hereby sues Defendant, CENTURION MANAGED CARE OF FLORIDA, LLC D/B/A CENTURION, LLC ("Centurion"), and alleges:

### NATURE OF THE ACTION

1.    This is an action for whistleblower discrimination and retaliation brought pursuant to §448.102, Florida Statutes and race and age discrimination and retaliation brought pursuant to Chapter 760, Florida Statutes.

2.    This action involves claims which are, individually, in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of costs and interest.

### PARTIES

3.    Dr. Ladele, is an African-American male who, at all relevant times, was under 40 years old. He is an osteopathic physician who has been practicing general medicine in Florida since 2013. He is thus sui juris.

1

4.      Defendant is a private, for-profit health care provider that specializes in providing health care services in jail and prison settings. It is a Delaware corporation with its principal place of business in St. Louis, Missouri. At all relevant times, Defendant conducted business in Leon County, Florida as "Centurion, LLC" or "Centurion Florida," under a contract with the Florida Department of Corrections ("DOC") to provide health care to inmates at DOC's Main Reception and Medical Center in Lake Butler ("RMC"). At all relevant times, Defendant was authorized to conduct business under the laws of the state of Florida and was subject to the provisions of the statutes enumerated herein. At all relevant times, Defendant was Dr. Ladele's employer as that term is defined in the statutory provisions cited herein.

## CONDITIONS PRECEDENT

5.      Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff filed a charge of discrimination with the Florida Commission on Human Relations and with the EEOC.

## STATEMENT OF ULTIMATE FACTS

6.      In July 2014, Dr. Ladele was first hired by a company called Corizon, LLC ("Corizon") to work under a contract with DOC as Chief Health Officer at a DOC facility in Chipley, Florida.

7.      In August 2015, Corizon promoted Dr. Ladele to the position of Associate Regional Medical Director for some of the medical facilities it operates at RMC (a large prison-medical complex).

8.      Plaintiff's duties and responsibilities as Medical Director at RMC included, among other things, managing the staff and operations of a 120-bed hospital for inmates; a 24-hour urgent care clinic; cancer, dialysis, and surgical centers; and a radiology/imaging department.

2

9.      In May 2016, Defendant "bought out," or otherwise took over Corizon's contract with DOC for the operation of medical facilities at RMC. When this happened, Defendant hired Dr. Ladele to continue in his position as Regional Medical Director for RMC.

10.     After Defendant hired him, Dr. Ladele reported, on clinical matters, directly to Dr. Daniel Cherry III, Defendant's State Medical Director, a Caucasian male who at all relevant times was over 40 years old.  Employment decisions about Plaintiff's employment were made from Defendant's corporate office in Leon County, Florida.

11.     Defendant also answered, on administrative matters, to RMC Health Services Administrator ("HSA") Priscilla Roberts and Defendant's Director of Operations, Tamara Taylor, both Caucasian females who, at all relevant times were over 40 years old.

12.     After several months of his employment with Defendant, Dr. Ladele was subjected by Defendant to inferior, differential treatment in comparison to his older, Caucasian colleagues.

13.     Throughout his tenure with Defendant, Dr. Ladele repeatedly complained and raised questions and concerns about the level of staffing at RMC; the quality of care being provided by Defendant's staff; as well as how Defendant's practices, policies, and procedures (or its failure to follow them) affected the quality of care delivered to inmates.  Dr. Ladele also raised concerns about Defendant's compliance with the various industry and governmental standards, rules, and regulations governing the delivery of such care, including numerous statutes and regulations concerning health care facilities management and standards for the delivery of care under the jurisdiction of, or promulgated by, Florida's Agency for Healthcare Administration and the Florida Department of Health.

3

14.     The concerns and complaints Dr. Ladele raised regarding the standard of care being observed by Defendant and its employees also led to Dr. Ladele receiving inferior, differential treatment in comparison to colleagues and co-workers who raised no similar complaints.

15.     The complaints and concerns Dr. Ladele raised were about Defendant's delivery and quality of care to inmates not meeting the standard of care required under these circumstances.

16.     On or about January 31, 2017, Dr. Ladele wrote a lengthy and detailed e-mail to, among others, Dr. Cherry and Dr. Cherry's boss, Dr. Jeff Keller, Defendant's Chief Medical Officer and Vice President of Operations, Vicki Love. In this e-mail, Dr. Ladele explained in detail the grave concerns he had with how short-staffed Defendant's operation at RMC had become.

17.     Dr. Ladele's January 31, 2017 email set forth and described some action items he had proactively come up with for himself to ameliorate the problems Defendant's chronic short-staffing were causing him and his staff.

18.     However, Dr. Ladele's January 31, 2017 e-mail was ignored. He followed it up with another e-mail to the same people on March 30, 2017, addressing the same issues and concerns. In this e-mail, Dr. Ladele described the progress he had made on the action items he had proactively assigned himself in the January 31, 2017 email.

19.     Dr. Cherry made it known to Dr. Ladele that he was not happy with Dr. Ladele sending out e-mails critical of the way Defendant was managing RMC. Specifically, Dr. Cherry warned Dr. Ladele that his e-mails "may not go over well" with senior Centurion management and that Dr. Ladele should be especially careful since he was "the highest paid Regional Medical Director company-wide."

20.     Throughout his employment with Defendant, Dr. Ladele raised concerns to senior management about the performance of HSA Priscilla Roberts, a woman known to have used racial

4

slurs against RMC employees in the past, nearly costing Roberts her job. Specifically, Roberts had called someone a "ghetto nigger" and Plaintiff voiced his opinion and opposition to her racial treatment of other staff and the unjust/unequal treatment of minorities in the workplace. The actions taken against Plaintiff were taken at least in part because of his opposition to racism in the workplace.

21.     Dr. Ladele managed the clinical staff of the Outpatient Unit. However, the units, particularly the outpatient clinic, which was under Roberts' administration and management, consistently failed audits due to mismanagement. Dr. Ladele he raised concerns about these failed audits with Director of Operations Tamara Taylor, Dr. Cherry, and other members of Defendant's senior management. However, Dr. Ladele's concerns were consistently ignored.

22.     On July 25, 2017, one of Dr. Ladele's patients, Patient E.S., underwent an emergency psychological examination conducted by Dr. Pablo Lomangcolob. Patient E.S. was an elderly, legally blind, male with end stage renal disease, on hemodialysis, who was experiencing altered mental status.

23.     Lomangcolob determined that E.S. was a danger to others due to his biting and stabbing behaviors and verbal threats he had made. Lomangcolob suggested that, in the near term, E.S. be placed in his own hospital room and not be put back in the general population.

24.     In response to Lomangcolob's report, Dr. Ladele consulted with the Warden and Deputy Warden of RMC and with Centurion HSA Priscilla Roberts. A suggestion was made that Patient E.S. be placed in solitary confinement. Dr. Ladele advised against this out of concern for patient safety. Dr. Ladele believed he had secured assurances E.S. would be placed in a hospital bed rather than solitary confinement.

25.     Despite his belief that he had the necessary assurances, E.S. was placed in solitary confinement anyway. He died the following day, July 26, 2017, as a result of bleeding to death and after lacking proper supervision, he manipulated in a manner that proved fatal the catheter he placed to facilitate dialysis.

26.     Dr. Ladele made his unhappiness with his orders not being followed and E.S.'s outcome known to Priscilla Roberts and his supervisor, Dr. Cherry.

27.     In August 2017, Dr. Ladele elevated to Defendant's senior management concerns that were relayed to him by his clinical staff concerning the stocking of "crash carts" located in RMC medical facilities. A crash cart is a mobile toolbox containing all the drugs and instruments used to resuscitate patients who have "coded" and are in or close to cardiac arrest.

28.     Among other problems, the crash carts, which were supposed to be stocked in strict accordance with various governmental and industry-wide rules, regulations, and standards, lacked necessary, working equipment. For example, one cart lacked an Ambu-bag, (an inflatable plastic bladder attached to a facemask squeezed to forcibly deliver oxygen to a patient either not breathing or struggling to breathe).

29.     In another case, a physician had to try four laryngoscopes (a lighted scope used to feed a breathing tube through the larynx into the lungs during intubation) from different crash carts before finding a fifth that worked properly, a potentially fatal complication resulting in a critical loss of time stabilizing a patient who either could not breathe or had serious trouble breathing.

30.     On or about August 16, 2017, Dr. Ladele contacted Defendant's former Chief Medical Officer, Dr. Jeffrey Keller, to address the lack of responsiveness by Defendant's senior management to his concerns over mismanagement and the quality of patient care at RMC. He forwarded to Dr. Keller documents and voicemails illustrating the lack of support he received from

6

Dr. Cherry and Victoria Love, Defendant's Vice President of Operations (a Caucasian female over 40) and discussed with Dr. Keller his concerns over how the mismanagement affected patient care. Dr. Keller told Dr. Ladele he would "pass along" his (Dr. Ladele's) concerns to the individuals about whom Dr. Ladele complained. Dr. Ladele had also discussed this same matter with Dr. Keller one month prior.

31.     As previously stated, Dr. Ladele's race, age, and the complaints and concerns he raised about racism and how Defendant's mismanagement negatively affected patient care and legal compliance resulted in his being subjected to inferior and differential treatment compared to other older, Caucasian colleagues and co-workers who had not engaged in protected whistleblower activity.

32.     By way of example only, shortly after Defendant hired Dr. Ladele, he asked if he could work four, ten-hour-a-day shifts every week instead of five, eight-hour shifts. Dr. Ladele had requested the shift change at least on three (3) occasions. During a meeting in his office with Dr. Cherry and Tamara Taylor present, Dr. Ladele once again requested the four day/ten hour shift; however Dr. Cherry specifically told Plaintiff this was not possible. However, when Dr. Chris Hadadd, an older Caucasian physician was later hired, Hadadd was allowed to work four ten-hour shifts a week, whereas Dr. Ladele was not. In fact, when Dr. Ladele complained to Dr. Cherry about this unfair treatment, Cherry responded this was the way things were going to be because "[he] said so."

33.     In December 2016, Dr. Ladele was told he would need to start punching a time card using a time clock. As the Regional Medical Director of RMC – a highly-paid, salaried employee with extensive management responsibilities – Defendant requiring Dr. Ladele to punch a time clock was neither a justified nor reasonable expectation. In fact, none of his older, Caucasian co-

7

workers and colleagues, who had not engaged in protected whistleblower activity, were required to punch a time clock.

34.     When on approved vacations, Dr. Ladele was frequently forced by Dr. Cherry to be "on-call" by telephone during significant portions of his paid annual leave (often all night). Dr. Ladele was also frequently required to manage clinical problems during the day. When Dr. Ladele attempted to claim compensation or reimbursement for this time spent working on vacation, or even just for the cost of the phone calls he made while working during his vacation, he was denied compensation.

35.     Similarly situated, older, Caucasian doctors who had not engaged in protected whistleblower and other protected activities were not subject to such treatment.

36.     Additionally, Dr. Ladele was singled out for extra work/projects that older, Caucasian doctors who had not engaged in protected whistleblower activity were not required to complete. By way of example, Dr. Ladele participated in the filming of a public service announcement, which was highly requested by Defendant [who requested]. Although Dr. Ladele agreed to perform the additional task relative to the public service announcement, it consumed a large amount of Dr. Ladele's free time. Dr. Ladele also prepared a lecture for a conference on Defendant's behalf, which took up a portion of his free time.

37.     On or about July 31, 2017, Dr. Ladele was given an annual performance review completed by Dr. Cherry. Despite all the extra time and proactive effort Dr. Ladele put into his job, over and above what his similarly situated colleagues either volunteered or were required to invest, his review was generally neutral. He met expectations in all applicable dimensions and received a few favorable compliments on his performance, including one that read "The client [DOC] is very pleased with Dr. Ladele's responsiveness to client inquiries and requests."

8

38.     On or about June 9, 2017, Dr. Ladele wrote to the HSA at Suwannee Correctional Institute ("C.I."), Ms. Brandice Corbin and two other staff members, asking that she arrange the transfer of a Suwanee C.I. prisoner/patient named Patient C.H. from Suwanee C.I. to RMC so that C.H. could be evaluated for possible treatment of Hepatitis C through the administration of specialized drugs.

39.     June 9, 2017 was the last day of work with DOC for Ms. Corbin, who assured Dr. Ladele she would forward the necessary instructions to others at Suwanee C.I. so the transfer would be arranged after her departure. This apparently never happened.

40.     Dr. Ladele followed up with the Suwannee C.I. administrative staff on June 27, 2017 inquiring about the status of his original request. His follow-up e-mail was ignored as well.

41.     On July 10, 2017, Dr. Ladele enlisted the assistance of RMC HSA Priscilla Roberts, requesting her help in facilitating the transfer of Patient C.H. from Suwannee C.I. to RMC.

42.     Patient C.H. was transferred to RMC on or about July 13, 2017.

43.     Over the course of the next month, Patient C.H. was tested and evaluated for, and then cleared to begin Hepatitis C treatment using a drug called Harvoni. Harvoni is a relatively new, reasonably well-tolerated, oral anti-viral drug that, remarkably, can permanently cure Hepatitis C in as little as twelve weeks.

44.     In August 2017, Dr. Ladele wrote orders for lab work for C.H. that were mishandled or misplaced, resulting in the labs not being done.

45.     On August 18, 2017, Dr. Ladele, realizing his ordered lab work had not been completed, re-ordered the labs and then followed up while on vacation with the lab to make sure what he ordered was properly completed. Despite his best efforts, the lab conducted the wrong test, not the one he had originally ordered.

9

46.     While on vacation from August 20-27, 2017, Dr. Ladele called RMC repeatedly to ensure the labs he ordered were done properly and that Patient C.H. was prescribed and received treatment with Harvoni. Despite his tenacious follow-up, this proved harder than pulling teeth because of the miscommunication and incompetence of various RMC staff who did not work directly for Dr. Ladele. For example, on August 24, Ladele was notified by the pharmacy it still did not have the Harvoni prescription he had arranged the week prior.

47.     Ladele placed calls – usually several a day – to RMC's lab, pharmacy, and urgent care clinic on August 20, 21, 23, 24, and 25, 2017, trying to get Patient C.H.'s labs completed properly and get his Harvoni treatment started.

48.     Shortly after returning from his vacation, Dr. Ladele was notified that, despite all his efforts, Patient C.H. had still gone untreated.  At this point, there was apparently nothing that Dr. Ladele could say or do to get other Centurion or DOC staff not under his supervision to treat Patient C.H. in accordance with his orders.

49.     On or about August 30, 2017, Dr. Ladele was told by Tamera Taylor and Lisa Lynch, Defendant's Human Resources Department Representative, that he was being suspended because he was the subject of a complaint that neither Taylor nor Human Resources could describe to him.

50.     Despite all of Dr. Ladele's efforts to secure appropriate treatment for Patient C.H. in the face of the miscommunication, indifference, and incompetence of the staff at Suwannee C.I. and RMC, Dr. Ladele was unlawfully terminated on September 5, 2017. Despite Dr. Ladele's requests for reasons for his termination during a telephone call with Tamar Taylor and Lisa Lynch on September 5, 2017, he was never provided a reason.

51.     Moreover, after Dr. Ladele's wrongful termination, Defendant's Regional Vice

10

President Lisa Love indicated in writing, that Dr. Ladele had never been disciplined, never placed on probation, and never investigated for any matter.

52.     In fact, Defendant did not terminate Dr. Ladele for any valid reason. Dr. Ladele was terminated because of his protected whistleblower activity, his race (African American), his age (under 40) and because of reporting discrimination and being the victim of retaliation thereafter.

53.     Dr. Ladele has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for those services. Defendant should be made to pay said fee under the statutory provisions cited herein and such other grounds as are authorized by law.

## COUNT I
## PRIVATE WHISTLEBLOWER RETALIATION

54.     Paragraphs 1-53 are re-alleged and incorporated herein by reference.

55.     This is an action for private whistleblower retaliation brought under §448.101, et seq., Fla. Stat.

56.     As set forth in greater detail above, during Dr. Ladele's employment with Defendant, he objected verbally and in writing to certain practices of Defendant, its employees, and agents which violated the applicable reasonable standard of care for the delivery of medical care in a prison hospital setting, in violation of state and federal laws, including statutes, rules, and regulations relating to or promulgated by Florida's Agency for Healthcare Administration or the Florida Department of Health, and and/or refused to participate in practices of Defendant that were in violation of one or more laws, rules or regulations.

57.     After Dr. Ladele's numerous objections to Defendant's and its employees' and agents' substandard practices, Defendant discriminated and retaliated against Dr. Ladele by, among other things, unlawfully terminating him, in violation of §448.101, et seq., Fla. Stat.

11

58.    Dr. Ladele was terminated because he objected to and/or engaged in certain protected activities. Specifically, he: disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the Defendant that is in violation of a law, rule, or regulation, and Dr. Ladele, in writing, reported the brought the activity, policy, or practice to the attention of a supervisor or the Defendant and afforded the Defendant a reasonable opportunity to correct the activity, policy, or practice; or objected to, or refused to participate in, any activity, policy, or practice of the Defendant which is in violation of a law, rule, or regulation.

59.    The disclosures and objections made by Dr. Ladele were protected under §448.102, Fla. Stat.

60.    Defendant is liable for the unlawful, discriminatory and retaliatory treatment because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent Dr. Ladele's unlawful treatment.

61.    Furthermore, Defendant is liable for its unlawful, discriminatory and retaliatory treatment because it controlled, allowed, and participated in the same. Defendant's known allowance and ratification of these actions and inactions created, perpetuated, and facilitated an unlawful practice within the meaning of the statutes referred to herein. In effect, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of an unlawful, discriminatory and retaliatory nature and in violation of the laws set forth herein.

62.    As a direct and proximate result of Defendant's conduct described above, Dr. Ladele has suffered past and future pecuniary losses, including lost past and future wages and benefits and interest on the same. Dr. Ladele has also suffered non-pecuniary losses, including loss of

12

reputation, inconvenience, emotional distress, mental pain and suffering, mental anguish, and loss of enjoyment of life. These damages have occurred in the past and are permanent and continuing. Dr. Ladele is also entitled to injunctive/equitable relief.

## COUNT II
## RACE DISCRIMINATION

63.     Paragraphs 1-53 are re-alleged and incorporated herein by reference.

64.     This is an action for race discrimination brought under Chapter 760 Fla. Stat.

65.     As set forth in greater detail above, Defendant discriminated against Dr. Ladele by, among other things, subjecting him to inferior and differential treatment and unlawfully terminating him based on his race (African-American).

66.     Defendant is liable for Dr. Ladele's unlawful, discriminatory treatment because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent such unlawful treatment.

67.     Furthermore, Defendant is liable for Dr. Ladele's unlawful, discriminatory treatment because it controlled, allowed, and participated in the same. Defendant's known allowance and ratification of these actions and inactions created, perpetuated, and facilitated an unlawful practice within the meaning of the statutes referred to herein. In effect, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of an unlawful, discriminatory and retaliatory nature and in violation of the laws set forth herein.

68.     As a direct and proximate result of Defendant's conduct described above, Dr. Ladele has suffered past and future pecuniary losses, including lost past and future wages and benefits and interest on the same. Dr. Ladele has also suffered non-pecuniary losses, including loss of

13

reputation, inconvenience, emotional distress, mental pain and suffering, mental anguish, and loss of enjoyment of life. These damages have occurred in the past and are permanent and continuing. Dr. Ladele is also entitled to injunctive/equitable relief and punitive damages.

## COUNT III
## AGE DISCRIMINATION

69.     Paragraphs 1-53 are re-alleged and incorporated herein by reference.

70.     This is an action for age discrimination.

71.     As set forth in greater detail above, Defendant discriminated against Dr. Ladele by, among other things, subjecting him to inferior and differential treatment and unlawfully terminating him based on his age (under 40), in violation of Chapter 760, Fla. Stat.

72.     Defendant is liable for Dr. Ladele's unlawful, discriminatory treatment because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent such unlawful treatment.

73.     Furthermore, Defendant is liable for Dr. Ladele's unlawful, discriminatory treatment because it controlled, allowed, and participated in the same. Defendant's known allowance and ratification of these actions and inactions created, perpetuated, and facilitated an unlawful practice within the meaning of the statutes referred to herein. In effect, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of an unlawful, discriminatory and retaliatory nature and in violation of the laws set forth herein.

74.     As a direct and proximate result of Defendant's conduct described above, Dr. Ladele has suffered past and future pecuniary losses, including lost past and future wages and benefits and interest on the same. Dr. Ladele has also suffered non-pecuniary losses, including loss of

14

reputation, inconvenience, emotional distress, mental pain and suffering, mental anguish, and loss of enjoyment of life. These damages have occurred in the past and are permanent and continuing. Dr. Ladele is also entitled to injunctive/equitable relief and punitive damages.

## COUNT IV
### RETALIATION

75.     Paragraphs 1-53 are hereby re-alleged and reincorporated as if set forth in full herein.

76.     Defendant is an employer as that term is used under the applicable statutes referenced above.

77.     The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting him under Chapter 760, Florida Statutes.

78.     The foregoing unlawful actions by Defendant were purposeful.

79.     Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and was the victim of retaliation thereafter, as related in part above. The events set forth herein led, at least in part, to Plaintiff's termination.

80.     Plaintiff is a member of a protected class because he reported unlawful employment practices and was the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

81.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life,

15

and other tangible and intangible damages.  These damages are continuing and are permanent.
Plaintiff is entitled to punitive damages and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Ladele demands judgment against Defendant for the following:

(a)     that process issue and this Court take jurisdiction over this case;

(b)     that this Court grant equitable relief against Defendant under the applicable
counts set forth above, mandating Defendant's obedience to the laws
enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff, awarding all legally-
available general and compensatory damages and economic loss to Plaintiff
from Defendant for Defendant's violations of the law enumerated herein;

(d)     enter judgment against Defendant and for Dr. Ladele, permanently
enjoining Defendant from future violations of laws enumerated herein;

(e)     enter judgment against Defendant and for Dr. Ladele awarding Dr. Ladele
attorney's fees and costs; award Dr. Ladele interest, including pre- and post-
judgment interest, where appropriate; and

(f)     grant such other further relief as being just and proper under the
circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 27th day of June 2019.

16

Respectfully Submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
Michelle2@mattoxlaw.com
Marlene@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF

17

Filing # 91791901 E-Filed 06/27/2019 02:35:48 PM

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT IN
AND FOR LEON COUNTY,
FLORIDA

GREGORY A. LADELE, D.O.,

        Plaintiff,

v.

CENTURION MANAGED CARE OF
FLORIDA, LLC. D/B/A
CENTURION, LLC,

        Defendant.

_____/

CASE NO. : 19-CA-
FL BAR NO.: 0739685

2019 CA 001511

**SUMMONS**


M3M 1369
8/28/19 11:04

THE STATE OF FLORIDA:

To Each Sheriff of the State:

        YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on Defendant:

**CENTURION MANAGED CARE OF FLORIDA, LLC. D/B/A CENTURION, LLC
C T CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL 33324**

        Each defendant is required to serve written defenses to the complaint or petition on **Marie A. Mattox, P. A.,** Plaintiff's attorney, whose address is **203 North Gadsden Street, Tallahassee, Florida 32301,** within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court, either before serve on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

        DATED on _____, 2019.

                          CLERK OF THE CIRCUIT COURT

                          By: _____ , 06/28/2019



# LEON COUNTY Receipt of Transaction
## Receipt #    1439482

GWEN MARSHALL
Clerk of Court and Comptroller
LEON COUNTY, FLORIDA

**Received From:**
Marie A. Mattox
203 North Gadsden Street
Tallahassee, FL  32301

**On Behalf Of:**

On: 6/28/2019  5:21:19PM
Transaction # 100694923
Cashiered by: L WILLIAMS

CaseNumber   2019 CA 001511

Judge   ANGELA C DEMPSEY

GREGORY A LADELE  *VS*  CENTURION MANAGED CARE OF FLORIDA LLC DBA CENTURIO

Comments:

| Fee Description | Fee | Prior Paid | Waived | Due | Paid | Balance |
|---|---|---|---|---|---|---|
| (COMP_CA) COMPLAINT | 400.00 | 0.00 | 0.00 | 400.00 | 400.00 | 0.00 |
| (SUIS) SUMMONS ISSUED | 10.00 | 0.00 | 0.00 | 10.00 | 10.00 | 0.00 |
| Total: | 410.00 | 0.00 | 0.00 | 410.00 | 410.00 | 0.00 |
| Grand Total: | 410.00 | 0.00 | 0.00 | 410.00 | 410.00 | 0.00 |

PAYMENTS

| Payment Type | Reference | | Amount | Refund | Overage | Change | Net Amount |
|---|---|---|---|---|---|---|---|
| CREDIT CARD EFILE | 91791901 | OK | 410.00 | 0.00 | 0.00 | 0.00 | 410.00 |
| | | Payments Total: | 410.00 | 0.00 | 0.00 | 0.00 | 410.00 |

Page 1 of 1

Filing # 95803320 E-Filed 09/17/2019 09:13:55 AM

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

**GREGORY A. LADELE, D.O.,**

> **Plaintiff,**

**v.**                                                      **Case No. 2019-CA-001511**

**CENTURION MANAGED CARE OF
FLORIDA, LLC. d/b/a CENTURION,
LLC,**

> **Defendant.**

_____/

### DEFENDANT'S MOTION TO DISMISS OR,
### IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

Defendant Centurion Managed Care of Florida, LLC ("Centurion"), by and through

its undersigned counsel, and pursuant to Florida Rules of Civil Procedure 1.140(b)(6) and

1.1460(b)(1), hereby moves to dismiss Plaintiff Gregory A. Ladele's ("Ladele" or "Plaintiff")

Complaint for failure to state a cause of action, failure to plead facts sufficient to establish

that Centurion was his employer, and failure to sufficiently plead satisfaction of a condition

precedent.   In the alternative, Defendant moves pursuant to Fla.R.Civ.P. 1.140(e) for a

more definite statement. The grounds upon which the instant motion is based are set forth

in the following Supporting Memorandum of Law:

### SUPPORTING MEMORANDUM OF LAW

### I.

### BACKGROUND

1.      This lawsuit arises out of Plaintiff's alleged employment with Defendant.

[Compl., ¶ 4].

2.      In his Complaint, Plaintiff asserts that Centurion terminated his employment and subjected him to age and race discrimination in violation of Chapter 760, *Fla. Stat.*, and retaliation in violation of Section 448.102 and Chapter 760 of the Florida Statutes. [Compl., ¶ 1].

3.      However, Plaintiff fails to plead any facts to support his allegation that Centurion was his employer and has otherwise failed to state a cause of action under either Chapter 760 or Section 448.102.  Accordingly, the Complaint should be dismissed.

II.

## LEGAL STANDARD

1.      The Florida Rules of Civil Procedure require that pleadings set forth "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief." *See* Fla. R. Civ. P. 1.110(b). "The complaint must set out the elements and facts that support them so that the court and the defendant can clearly determine what is being alleged." *Barrett v. City of Margate,* 743 So. 2d 1160, 1162-63 (Fla. 4th DCA 1999). It is therefore "insufficient to plead opinions, theories, legal conclusions or argument." *Id.* at 1163.

2.      A plaintiff must also state their pleadings with sufficient particularity to enable defendants to prepare defenses. *Sunbeam Television Corp. v. Mitzel*, 83 So.3d 865, 875 (Fla. 3d DCA 2012) (citing *Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowman Instrument Corp.*, 537 So.2d 561, 563 (Fla. 1988)).  A motion to dismiss therefore tests the legal sufficiency of a complaint to state a cause of action. *Reyes ex rel. Barcenas v. Roush*, 99 So. 3d 586, 589 (Fla. 2d DCA 2012).

3.      In addition, Florida Rule of Civil Procedure 1.140(e) allows litigants to request a more definite statement if a pleading is vague and ambiguous.  The purpose of

a motion for more definite statement is to determine if a pleading is sufficiently vague, indefinite, or ambiguous as to require the pleading to be amended in order to enable the responding party to intelligently discern the issues to be litigated and to properly frame its reply or answer. *Conklin v. Boyd*, 189 So.2d 401, 403 (Fla. 1st DCA 1996).

III.

## ARGUMENT

### A. Failure To State A Cause Of Action & Failure To Identify The Proper Defendant

1.      Florida's Private Whistleblower Act Section 448.102(3), *Florida Statutes*, prohibits an employer from taking retaliatory personnel action against an employee who "[o]bjected to, or refused to participate in, any activity, policy, or practice ***of the employer*** which is in violation of a law, rule, or regulation." (Emphasis supplied). A violation of law by anyone other than the employer cannot adequately support a claim based under the FWA. *Sussan v. Nova Southeastern Univ.,* 723 So.2d 933 (Fla. 4th DCA 1999); *Douberley v. Burger King Corp.*, 2007 U.S. Dist. LEXIS 29302 (M.D. Fla. Apr. 27, 2007).

2.      Similarly, Chapter 760 makes it "an unlawful employment practice for an ***employer*** to discharge or to fail or refuse to hire an individual, or otherwise discriminate against any individual … because of such individual's race, color, religion sex, national origin, age, handicap, or marital status." (emphasis added).

3.      Here, Plaintiff baldly alleges that he was employed by Centurion. [Compl., ¶ 4]. However, Plaintiff fails to provide any facts to support his assertion that he was an employee of Centurion, and Centurion denies that it ever employed Plaintiff. Moreover, Centurion Manage Care of Florida, LLC has never held a contract to provide medical staff to the Florida Department of Corrections ("FDOC"), nor has it ever had any employees.

Plaintiff does not claim that Centurion provided his paychecks, that Centurion directed his work, or that he was subject to Centurion's policies and procedures.  Instead, Plaintiff merely asserts "Defendant was Plaintiff's employer as that term is defined in the statutory provisions cited herein."

4.      Accordingly, because Plaintiff has not sufficiently plead facts to establish that Centurion was his employer as defined by Section 448.102 and Chapter 760, his Complaint must be dismissed.

**B. Plaintiff Failed To Exhaust Administrative Remedies As To His Age Discrimination Claim And Fails to Plead A Viable Claim**

1.      Prior to filing a civil action alleging discrimination in violation of Chapter 760, *Fla. Stat.*, an individual seeking relief must file a complaint with the FCHR or EEOC and exhaust the administrative remedies provided by the FCRA.  *See* § 760.11(1) and (4), *Fla. Stat.*; *Sheridan v. State*, 182 So.3d 787 (Fla. 1st DCA 2016).

2.      Plaintiff's FCRA claims are subject to the administrative exhaustion requirement.  *See* § 760.11(1) ("[a]ny person aggrieved by a violation of [the FCRA] may file a complaint with the commission within 365 days of the alleged violation, naming the [responsible party] and describing the violation").

3.      Here, Plaintiff merely alleges that he has "satisfied all conditions precedent to bringing this action in that Plaintiff filed a charge of discrimination with the Florida Commission on Human Relations and with the EEOC." [Compl., ¶ 5].  Plaintiff does not attach his Charge or his Notice of Right to Sue.

4.      Notably, Plaintiff does not allege that he filed a Charge that encompassed *all* of the requisite claims contained in the Complaint.

*ACTIVE 45691113v2*

5.      As noted above, a plaintiff is required to both file a charge and describe the alleged violation in order to comply with the administrative exhaustion requirement.  *See* § 760.11(1).  If a plaintiff desires to pursue multiple theories of discrimination, he generally must include each such theory in his charge.  *See Anderson v. Embarq/Sprint*, 379 F. App'x 924, 926 (11th Cir. 2010) (affirming the district court's dismissal of a failure-to-promote claim because the plaintiff did not include those claims in his EEOC filing); *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994) (stating that "[w]hen an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge").

6.      In the present case, Plaintiff filed a charge alleging putative race discrimination, but he did not allege age discrimination.  *See* **Exhibit 1.**[1]  Plaintiff failed to check the "age" box or to include any facts that could possibly support an allegation of age discrimination.[2]   Accordingly, Plaintiff is foreclosed from now pursuing an age discrimination claim.

---

[1]  While a court is ordinarily limited to the allegations of a plaintiff's complaint, a court may consider an extrinsic document in ruling on a motion to dismiss if the document is "(1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010)(*quoting SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)). Additionally, a court may take judicial notice of and consider documents attached to a motion to dismiss or response, which are public records that are "central" to a plaintiff's claims, without converting the motion to dismiss into a motion for summary judgment. This is so, as long as such documents are "public records that [are] `not subject to reasonable dispute' because they [are] `capable of accurate and ready determination by resort to sources whose accuracy [can] not reasonably be questioned.'" *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010)(*quoting* Fed. R. Evid. 201(b)). Moreover, "a court may take notice of another court's order . . . for the limited purpose of recognizing the `judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

[2]  Defendant recognizes that Plaintiff's charge includes boilerplate language referring to multiple statutes, including the Americans with Disabilities Act and the Age Discrimination in Employment Act, but his failure to offer any facts in support of the boilerplate language is fatal to his claims.

5

7.     Moreover, even assuming *arguendo* that Plaintiff did exhaust his administrative remedies with regard to his age discrimination claim, this claim must be dismissed because Plaintiff admittedly is *under the age of 40* and Florida law does not permit reverse age discrimination claims such as Plaintiff attempts to allege here. [Compl., ¶ 3].

8.     The Florida Civil Rights Act of 1992 (FCRA) prohibits age discrimination in the workplace. *See* § 760.10(1)(a), *Fla. Stat.* (2007). Florida state courts have interpreted that the FCRA follows federal law, which prohibits age discrimination through the Age Discrimination in Employment Act (ADEA). 29 U.S.C. § 623. Moreover, Florida state courts have determined that Federal case law interpreting ADEA applies to cases arising under the FCRA. *See Brown Distrib. Co. of W. Palm Beach v. Marcell*, 890 So. 2d 1227, 1230 n.1 (Fla. 4th DCA 2005) (*citing Fla. State Univ. v. Sondel*, 685 So. 2d 923, 925 n.1 (Fla. 1st DCA 1996)); *Joshua v. City of Gainesville*, 768 So. 2d 432, 435 (Fla. 2000)) ("The "Florida Civil Rights Act of 1992 [] was patterned after Title VII of the Civil Rights Acts of 1964 and 1991, [] as well as the Age Discrimination in Employment Act (ADEA), []. Federal case law interpreting Title VII and the ADEA is applicable to cases arising under the Florida Act").

9.     Florida state courts have adopted the ADEA *prima facie* analysis and require that the plaintiff prove: "1) the plaintiff is a member of a protected class, *i.e., at least forty years of age*; 2) the plaintiff is otherwise qualified for the positions sought; 3) the plaintiff was rejected for the position; 4) the position was filled by a worker who was substantially younger than the plaintiff." *City of Hollywood V. Hogan*, 986 So.2d 634 (Fla.

*ACTIVE 45691113v2*

4th DCA 2008) (internal citations omitted) (emphasis supplied).  Here, Plaintiff simply cannot make his *prima facie* showing because he is admittedly under the age of 40.

10.    Plaintiff also cannot plead his *prima facie* case because Florida law does not recognize a reverse age discrimination claim.  In *Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581 (2004), the United States Supreme Court determined that the ADEA does not prohibit reverse discrimination, i.e., favoring the old over the young.  The Court stated that: "[t]he ADEA was concerned with protecting a relatively old worker from discrimination that worked to the advantage of the relatively young." *Id.*  This interpretation has been adopted by courts of appeal in Florida.  *See Walker v. City of Pembroke Pines*, 2013 Fla. App. LEXIS 12346 (Fla. 4th DCA 2013) ("*Affirmed. See City of Hollywood v. Hogan*, 986 So. 2d 634, 641-42 (Fla. 4th DCA 2008) (adopting federal ADEA analysis for age discrimination claim under Florida Civil Rights Act of 1992; stating "[a]ge discrimination statutes protect only employment decisions which disadvantage an older worker in favor of a younger worker") (*citing Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 124 S. Ct. 1236, 157 L. Ed. 2d 1094 (2004))"); *see also Petrik v. City of Pembroke Pines*, 120 So.3d 102 (Fla. 4th DCA 2013) (same); *City of Hollywood v. Hogan*, 986 So. 2d 634 (Fla. 4th DCA 2008) (same).

11.    Accordingly, for the reasons stated above, Plaintiff's age discrimination must be dismissed.

## C. Plaintiff's Florida Whistleblower Act Claim Fails As A Matter Of Law

1.    The Florida Whistleblower Act ("FWA"), § 448.101 *et seq, Fla. Stat.*, was enacted to protect "private employees who report or refuse to assist employees who violate laws enacted to protect the public." *Jenkins v. Golf Channel*, 714 So.2d 558, 563

7

(Fla. 5th DCA 1998).  Further, the FWA "provides employees a cause of action against employers who wrongfully discharge them for…objecting to or refusing to participate in the employer's illegal practices." *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So.3d 904 (Fla. 4th DCA 2013) (*citing Vanacore v. UNC Ardco, Inc.*, 697 So.2d 892, 893 (Fla. 4th DCA 1997)).

2.     To sustain a claim under the FWA, the employee must identify conduct that constitutes a violation of law, rule, or regulation. § 448.102(1), *Florida Statutes*; *see also Lauray v. Abell, 2005 WL 2043520* (M.D. Fla. Aug. 25, 2005). A plaintiff must also demonstrate that any alleged conduct objected to by the employee was prohibited or illegal conduct committed by an employer. *See Gillyard v. Delta Health Group, Inc.*, 757 So.2d 601 (Fla. 5th DCA 2000); *Shultz v. Tampa Elec. Co.*, 704 So. 2d 605, 606 (Fla. 2d DCA 1997); *Forrester v. John H. Phipps, Inc.*, 643 So.2d 1109, 1111-12 (Fla. 1st DCA 1994) (emphasis added).

3.     Here, the Complaint alleges, in generalized and conclusory terms that "[a]s set forth in greater detail above, during Dr. Ladele's employment with Defendant, he objected verbally and in writing to certain practices of Defendant, its employees, and agents which violated the applicable reasonable standard of care for the delivery of medical care in a prison hospital setting, in violation of state and federal laws, including statutes, rules, and regulations relating to or promulgated by Florida's Agency for Healthcare Administration or the Florida Department of Health, and and/or refused to participate in practices of Defendant that were in violation of one or more laws, rules or regulations." [Compl., ¶ 56].

*ACTIVE 45691113v2*

4.      Plaintiff's complaint contains allegations of racial and age discrimination, as well as retaliation under the FCRA and the FWA.  However, these claims are distinct and should not be alleged together because they require separate burdens of proof.  Here, however, Plaintiff incorporates and re-alleges *all 53 paragraphs* preceding Count I and fails to identify which of these factual allegations support which cause of action lodged against Defendant.   Accordingly, Counts I and IV of the Complaint should be dismissed, or Ladele should be required to file a more definite statement to enable Defendant to identify the allegations lodged against it because the Complaint improperly merges his claims of discrimination with other alleged retaliatory acts.

## IV.

## CONCLUSION

**WHEREFORE,** for the foregoing reasons, Defendant Centurion Managed Care of Florida, LLC respectfully requests the Court enter an Order dismissing Complaint or, in the alternative, requiring a more definite statement.

Respectfully submitted,

/s/ Catherine H. Molloy
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email: mccrear@gtlaw.com
Catherine H. Molloy
Florida Bar No. 33500
Email: molloyk@gtlaw.com
Cayla M. Page
Florida Bar No. 1003487
Email: pagec@gtlaw.com
GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard, Suite 1900
Tampa, Florida 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
*Attorneys for Defendant*

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 17, 2019, I electronically filed the foregoing document with the Clerk of the Court by using the E-Filing Portal, which will send a notice electronically to:

Marie Mattox
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, Florida 32301
marie@mattoxlaw.com

/s/Catherine H. Molloy
Attorney

10

# EXHIBIT 1

**FLORIDA COMMISSION ON HUMAN RELATIONS**

2009 Apalachee Parkway, Suite 200, Tallahassee, Florida 32301

**COMPLAINT OF DISCRIMINATION**

Date Stamp (FCHR Use Only)

FLORIDA COMMISSION HUMAN RELATIONS
2017 OCT 23 AM 10: 35

| SA. PERSONAL INFORMATION | FCHR No. | |
|---|---|---|
| Name | E-Mail Address | Date of Birth |
| Gregory Ladele | Gregoryladele11@msn.com | 5/25/1978 |
| Mailing Address | Home Telephone Number (area code) | |
| 8278 NW 53rd Street | 267-235-6633 | |
| City, State, and Zip Code | Work (if possible to call you there) | |
| Gainesville, FL 32653 | | |

| B. BUSINESS INFORMATION (employer, labor organization, employment or government agency, etc.) | | |
|---|---|---|
| Name | Number of Employees | Telephone Number |
| CENTURION MANAGED CARE OF FLORIDA, LLC | 15+ | 850-692-2314 |
| Street Address (Branch/Office in Florida) | City, State and Zip Code | County |
| 7700 FORSYTH BLVD. SUITE 800 | ST. LOUIS, MO 63105 | |

CAUSE OF DISCRIMINATION BASED ON – Check appropriate box(es)

☒ RACE   ☒ COLOR   ☐ SEX   ☐ RELIGION   ☐ DISABILITY/HANDICAP   ☐ NATIONAL ORIGIN   ☐ AGE   ☐ MARITAL STATUS   ☒ RETALIATION

DATE MOST RECENT DISCRIMINATION TOOK PLACE

September 5th 2017

**D. DISCRIMINATION STATEMENT:**

I believe I have been discriminated against pursuant to Chapter 760 of the Florida Civil Rights Act, and/or Title VII of the Federal Civil Rights Act, and/or the Age Discrimination in Employment Act, and/or the Americans with Disabilities Act as applicable for the following reason(s):

I am an African American (AA) male who was employed as a Medical Executive Director at the Regional Medical Center (RMC) in Lake Butler, FL. I believe I have been discriminated based on my race and for making objections towards discriminatory practices against other minority employees and concerns with how healthcare is being delivered to inmates. I was suspended on 8/30/17 and subsequently terminated on 9/5/17, without any previous disciplinary action at the RMC. Pricilla Roberts, Health Services Administrator (HSA), was accused of calling someone a "ghetto nigger". I have voiced my opinion on her racial treatment of other staff and the unjust/unequal treatment she receives from leadership. However, as a person of color, I got no such preferential treatment. In fact, the stated reason for my termination was "delays in patient care" which had never been a point of criticism towards me in the past. During the investigation, I was never advised of the allegations until the investigation was complete and after I had already submitted my statement. As far as I know, no on-site physicians were ever part of the investigation and it was merely administrative, furthering my belief that it was retaliatory. According to my Annual Performance Review received 7/31/17, no such concerns were ever addressed regarding my performance. I have raised concerns of PTO being taken while working on vacation, which none of my white colleagues have never been subject to. In regard to the situation for which my termination was based, I have copies of emails extending back for weeks in which I made tremendous effort to have the patient receive care. My efforts as well as my duties as a physician have been undermined by Ms. Roberts, a HSA with no medical education, whom is hostile towards minority physicians and staff. I believe my wrongful termination has been an attempt to protect the company by eliminating a high profile black physician, whom has voiced concerns about healthcare delivery that were ignored by management and staff, which also resulted in adverse events (including inmate death). In 2017, in addition to my wrongful termination, an AA Hospital Administrator, Josephine Eady, was suspended after complaints about Roberts's conduct, and an AA Director of Nursing, James Hankerson, resigned after voicing concerns and the possibility that policies and practices at the RMC would threaten his license. There are many other employees that have been subject to this discrimination and their names are available upon request. My employer has clearly allowed these employees and myself to continue to be subject to racial discrimination and retaliation. Ms. Roberts's actions however, have been met with impunity by leadership at the RMC.

I REQUEST TO BE AFFORDED FULL RELIEF TO WHICH I AM ENTITLED TO UNDER THE LAW(S).

**E. VERIFICATION.** Under penalties of perjury, I declare that I have read the foregoing complaint of discrimination and that the facts stated in it are true. I will advise the agency if I change my address or telephone number and I will cooperate fully with them in the processing of my complaint in accordance with their procedures.

SIGNATURE OF COMPLAINANT

DATE

10/20/17

FCHR Charge Form   Revised April 22, 2004

Filing # 95839429 E-Filed 09/17/2019 02:24:54 PM

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA**

**GREGORY A. LADELE, D.O.,**

       **Plaintiff,**

**v.**                                **Case No. 2019-CA-001511**

**CENTURION MANAGED CARE OF
FLORIDA, LLC. d/b/a CENTURION,
LLC,**

       **Defendant.**

_____/

**NOTICE OF APPEARANCE**

     **PLEASE TAKE NOTICE** that the undersigned counsel, Richard C. McCrea, Jr., of the law firm Greenberg Traurig, P.A., hereby appears as counsel for Defendant MHM Health Professionals, LLC. Undersigned counsel respectfully requests that the plaintiff serve upon him copies of all pleadings and other papers that she files or serves hereafter in this action and designates the following primary and secondary service emails:

Primary: mccrear@gtlaw.com

Secondary: ramosr@gtlaw.com

Respectfully submitted,

/s/ Richard C. McCrea, Jr.
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email: mccrear@gtlaw.com
Catherine H. Molloy
Florida Bar No. 33500
Email: molloyk@gtlaw.com
Cayla M. Page
Florida Bar No. 1003487
Email: pagec@gtlaw.com

*ACTIVE 45857094v1*

GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard, Suite 1900
Tampa, Florida 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 17, 2019 I electronically filed the foregoing document with the Clerk of the Court by using the E-Filing Portal, which will send a notice electronically to:

Marie Mattox
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, Florida 32301
marie@mattoxlaw.com

/s/ Richard C. McCrea, Jr.
Attorney

Filing # 95840059 E-Filed 09/17/2019 02:29:04 PM

## IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
## IN AND FOR LEON COUNTY, FLORIDA

**GREGORY A. LADELE, D.O.,**

    **Plaintiff,**

**v.**                                          **Case No. 2019-CA-001511**

**CENTURION MANAGED CARE OF
FLORIDA, LLC. d/b/a CENTURION,
LLC,**

    **Defendant.**

_____/

## NOTICE OF APPEARANCE

**PLEASE TAKE NOTICE** that the undersigned counsel, Cayla M. Page, of the law

firm Greenberg Traurig, P.A., hereby appears as co-counsel for Defendant MHM Health

Professionals, LLC. Undersigned counsel respectfully requests that the plaintiff serve

upon her copies of all pleadings and other papers that she files or serves hereafter in this

action and designates the following primary and secondary service emails:

                  Primary: pagec@gtlaw.com

                Secondary: ramosr@gtlaw.com

                         Respectfully submitted,

                         /s/ Cayla M. Page
                         Richard C. McCrea, Jr.
                         Florida Bar No. 351539
                         Email: mccrear@gtlaw.com
                         Catherine H. Molloy
                         Florida Bar No. 33500
                         Email: molloyk@gtlaw.com
                         Cayla M. Page
                         Florida Bar No. 1003487
                         Email: pagec@gtlaw.com

GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard, Suite 1900
Tampa, Florida 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 17, 2019 I electronically filed the foregoing document with the Clerk of the Court by using the E-Filing Portal, which will send a notice electronically to:

Marie Mattox
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, Florida 32301
marie@mattoxlaw.com

/s/ Cayla M. Page
Attorney

2

Filing # 96034499 E-Filed 09/20/2019 11:15:38 AM

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA**

**GREGORY A. LADELE, D.O.,**

      **Plaintiff,**

**v.**                                **Case No. 2019-CA-001511**

**CENTURION MANAGED CARE OF
FLORIDA, LLC. d/b/a CENTURION,
LLC,**

      **Defendant.**

_____/

## CORRECTED NOTICE OF APPEARANCE

**PLEASE TAKE NOTICE** that the undersigned counsel, Richard C. McCrea, Jr., of the law firm Greenberg Traurig, P.A., hereby appears as counsel for Defendant Centurion Managed Care of Florida, LLC.[1] Undersigned counsel respectfully requests that the plaintiff serve upon him copies of all pleadings and other papers that she files or serves hereafter in this action and designates the following primary and secondary service emails:

Primary: mccrear@gtlaw.com

Secondary: ramosr@gtlaw.com

Respectfully submitted,

/s/ Richard C. McCrea, Jr.
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email: mccrear@gtlaw.com
Catherine H. Molloy
Florida Bar No. 33500
Email: molloyk@gtlaw.com
Cayla M. Page

---

[1] Defendant maintains that it was not Plaintiff's employer. Plaintiff's correct employer was MHM Health Professionals, LLC.

*ACTIVE 45927490v1*

Florida Bar No. 1003487
Email: pagec@gtlaw.com
GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard, Suite 1900
Tampa, Florida 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 20, 2019 I electronically filed the foregoing document with the Clerk of the Court by using the E-Filing Portal, which will send a notice electronically to:

Marie Mattox
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, Florida 32301
marie@mattoxlaw.com

/s/ Richard C. McCrea, Jr.
Attorney

2

Filing # 96034765 E-Filed 09/20/2019 11:17:34 AM

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA**

**GREGORY A. LADELE, D.O.,**

      **Plaintiff,**

**v.**                            **Case No. 2019-CA-001511**

**CENTURION MANAGED CARE OF
FLORIDA, LLC. d/b/a CENTURION,
LLC,**

      **Defendant.**

_____/

## NOTICE OF APPEARANCE

**PLEASE TAKE NOTICE** that the undersigned counsel, Cayla M. Page, of the law firm Greenberg Traurig, P.A., hereby appears as co-counsel for Defendant hereby appears as counsel for Defendant Centurion Managed Care of Florida, LLC.[1] Undersigned counsel respectfully requests that the plaintiff serve upon her copies of all pleadings and other papers that she files or serves hereafter in this action and designates the following primary and secondary service emails:

Primary: pagec@gtlaw.com

Secondary: ramosr@gtlaw.com

Respectfully submitted,

/s/ Cayla M. Page
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email: mccrear@gtlaw.com
Catherine H. Molloy
Florida Bar No. 33500
Email: molloyk@gtlaw.com
Cayla M. Page

---

[1] Defendant maintains that it was not Plaintiff's employer.  Plaintiff's correct employer was MHM Health Professionals, LLC.

*ACTIVE 45927503v1*

Florida Bar No. 1003487
Email: pagec@gtlaw.com
GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard, Suite 1900
Tampa, Florida 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 20, 2019 I electronically filed the foregoing document with the Clerk of the Court by using the E-Filing Portal, which will send a notice electronically to:

Marie Mattox
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, Florida 32301
marie@mattoxlaw.com

/s/ Cayla M. Page
Attorney

Filing # 97384040 E-Filed 10/16/2019 02:54:12 PM

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA**

**GREGORY A. LADELE, D.O.,**

      **Plaintiff,**

**v.**                                  **Case No. 2019-CA-001511**

**CENTURION MANAGED CARE OF
FLORIDA, LLC. d/b/a CENTURION,
LLC,**

      **Defendant.**

_____/

## NOTICE OF HEARING

PLEASE TAKE NOTICE that a hearing has been scheduled on **Defendant's Motion to Dismiss or, in the Alternative, for a More Definite Statement** on January 16, 2020 at 10:00 a.m. or as soon thereafter as they may be heard, before the Honorable Angela Dempsey, Leon County Courthouse, 301 S. Monroe Street, Room 301-E, Tallahassee, Florida 32301,

      TIME RESERVED:  15 Minutes

      PLEASE GOVERN YOURSELF ACCORDINGLY.

                            Respectfully submitted,

                            /s/ Catherine H. Molloy
                            Richard C. McCrea, Jr.
                            Florida Bar No. 351539
                            Email: mccrear@gtlaw.com
                            Catherine H. Molloy
                            Florida Bar No. 33500
                            Email: molloyk@gtlaw.com
                            Cayla M. Page
                            Florida Bar No. 1003487
                            Email: pagec@gtlaw.com

**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Boulevard, Suite 1900
Tampa, Florida 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 16, 2019, I electronically filed the foregoing document with the Clerk of the Court by using the E-Filing Portal, which will send a notice electronically to:

Marie A. Mattox
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, Florida 32301
marie@mattoxlaw.com
michelle2@mattoxlaw.com
marlene@mattoxlaw.com

/s/Catherine H. Molloy
Attorney

*ACTIVE 46624023v1*

Filing # 98221662 E-Filed 11/01/2019 09:08:26 AM

IN THE CIRCUIT COURT OF THE SECOND
JUDICIAL CIRCUIT, IN AND FOR LEON
COUNTY, FLORIDA.

CASE NO. 2019 CA 1511
CIVIL DIVISION

GREGORY LADELE, D.O.,
     Plaintiff,

vs.

CENTURION MANAGED CARE OF
FLORIDA, LLC, D/B/A CENTURION, LLC,
     Defendant.

_____/

## NOTICE OF DISCLOSURE

THIS CAUSE, being before this Court sua sponte, the Court hereby discloses the following:

1)    Marie Mattox is on the undersigned's campaign committee which consists of over 100 attorneys in the Second Circuit.

2)    The Court believes this disclosure is required by Canon 3E(1) of the Code of Judicial Conduct and Judicial Ethics Advisory Committee opinion 2013-19.

This notice was provided on ~~October~~ Nov. 1, 2019.

                                    Angela C. Dempsey
                                    Circuit Judge

Copies provide to:
Marie Mattox, Attorney for Plaintiff
Catherine Molloy, Attorney for Defendant

Filing # 99275168 E-Filed 11/21/2019 03:42:32 PM

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

GREGORY A. LADELE, D.O.,

      **Plaintiff,**

v.                                  **Case No. 2019-CA-001511**

CENTURION MANAGED CARE OF
FLORIDA, LLC. d/b/a CENTURION,
LLC,

      **Defendant.**

_____/

### NOTICE OF SERVICE OF DEFENDANT'S FIRST SET OF
### INTERROGATORIES TO PLAINTIFF GREGORY A. LADELE, D.O.

**PLEASE TAKE NOTICE** that the original of Defendant's[1] First Set of

Interrogatories to Plaintiff Gregory A. Ladele, D.O. has been furnished by U.S. Mail and

a copy by electronic mail this *November 21*, 2019 to:

      Marie A. Mattox
      Marie A. Mattox, P.A.
      203 North Gadsden Street
      Tallahassee, Florida 32301
      marie@mattoxlaw.com
      michelle2@mattoxlaw.com
      marlene@mattoxlaw.com

      Respectfully submitted,

      Richard C. McCrea, Jr.
      Florida Bar No. 351539
      Email: mccrear@gtlaw.com
      Catherine H. Molloy
      Florida Bar No. 33500
      Email: molloyk@gtlaw.com
      Cayla M. Page

---

[1] Plaintiff has named the wrong entity. Plaintiff was employed by MHM Health Professionals, LLC f/k/a MHM Health Professionals, Inc.

*ACTIVE 45688209v1*

Florida Bar No. 1003487
Email: pagec@gtlaw.com
GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard, Suite 1900
Tampa, Florida 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
*Attorneys for Defendant*

2

Filing # 101563315 E-Filed 01/13/2020 03:21:41 PM

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

GREGORY A. LADELE, D.O.,

     Plaintiff,

v.                                     Case No. 2019-CA-001511

CENTURION MANAGED CARE OF
FLORIDA, LLC. d/b/a CENTURION,
LLC,

     Defendant.

_____/

## NOTICE OF CANCELLATION OF HEARING

**PLEASE TAKE NOTICE** the Defendant[1] is cancelling the hearing on **Defendant's**
**Motion to Dismiss or, in the Alternative, for a More Definite Statement** on **January**
**16, 2020 at 10:00 a.m.** before the Honorable Angela Dempsey, Leon County Courthouse,
301 S. Monroe Street, Room 301-E, Tallahassee, Florida 32301.   The parties have
agreed that the Plaintiff will file an amended pleading by January 27, 2020.

                              Respectfully submitted,

                              /s/ Catherine H. Molloy
                              Richard C. McCrea, Jr.
                              Florida Bar No. 351539
                              Email: mccrear@gtlaw.com
                              Catherine H. Molloy
                              Florida Bar No. 33500
                              Email: molloyk@gtlaw.com
                              Cayla M. Page
                              Florida Bar No. 1003487
                              Email: pagec@gtlaw.com

---

[1] The Plaintiff has named the wrong entity as his employer.  At all times relevant, Plaintiff was employed by
MHM Health Professionals, LLC, f/k/a MHM Health Professionals, Inc.

*ACTIVE 48167204v1*

**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Boulevard, Suite 1900
Tampa, Florida 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 13, 2020, I electronically filed the foregoing

document with the Clerk of the Court by using the E-Filing Portal, which will send a notice

electronically to:

Marie A. Mattox
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, Florida 32301
marie@mattoxlaw.com
michelle2@mattoxlaw.com
marlene@mattoxlaw.com

/s/Catherine H. Molloy
Attorney

Filing # 99275168 E-Filed 11/21/2019 03:42:32 PM

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA**

**GREGORY A. LADELE, D.O.,**

      **Plaintiff,**

**v.**                            **Case No. 2019-CA-001511**

**CENTURION MANAGED CARE OF
FLORIDA, LLC. d/b/a CENTURION,
LLC,**

      **Defendant.**

_____/

**DEFENDANT CENTURION OF FLORIDA, LLC'S FIRST SET OF
REQUESTS FOR PRODUCTION TO PLAINTIFF GREGORY A. LADELE**

Defendant Centurion, LLC, d/b/a Centurion Managed Care of Florida, LLC[1] ("Centurion of Florida" or "Defendant"), by and through its undersigned counsel, and pursuant to Rule 1.350, Florida Rules of Civil Procedure, hereby requests Plaintiff Gregory A. Ladele ("Ladele") to produce for inspection and/or copying by the undersigned counsel for Defendant the following documents, said documents to be produced at the office of undersigned counsel located in Tampa, Florida, and said documents to be produced within thirty (30) days of service of this request.

**DEFINITION AND INSTRUCTIONS**

The following preliminary statements, instructions and definitions apply to each of the requests set forth herein and are expressly deemed to be incorporated therein.

    A.    As used herein, the term "document" shall mean:

        (1)    All paper, printed or other tangible items relating to the transmission or storage of any form of information or communication, including correspondence,

---

[1] When Centurion, LLC attempted to register to do business in Florida, it was forced to register under a d/b/a because of a naming conflict, it chose Centurion Managed Care of Florida, LLC. Accordingly, Centurion, LLC does business as Centurion Managed Care of Florida, LLC in Florida. Plaintiff states this relationship backwards in the caption.

letters, text messages, SMS messages, Facebook messages, memoranda, notes, memoranda of telephone conversations or meetings, telephone messages, electronic mail or electronic messages regardless of how transmitted, recordings or transcriptions of voice-mail messages, diaries, calendars, appointment books, audio or video recordings or files, graphics files, transcriptions, compilations or writings or things of any kind related to the category in question, including all drafts or copies thereof, regardless of how made, reproduced or stored;

      (2)    All paper, printed or other tangible items containing or related to medical information, including, in addition to the types of documents in category (1) above, patient charts, interview notes, progress notes, records of treatment, records of prescriptions, records of tests and measurements regardless of form, billing records, insurance claims, payment history, or any other type of document containing patient history, diagnoses, impressions, testing, medical orders, treatment, or any communication with the patient or any other person regarding the patient, compilations or writings or things of any kind related to the category in question, including all drafts or copies thereof, regardless of how made, reproduced or stored, whether in paper, electronic, graphic, or other tangible medium;

      (3)    All information or data (whether text, data, numeric, audio, video, or any combination of the above) stored in any form of electronic, graphic or tangible medium, including computer files or storage devices, sound storage or files, graphics storage or files, photographic negative or prints, films, or any other tangible recording or storage medium including tape, disk, cards or wire constituting, containing or pertaining to the requested categories.  If the information contained in the computer files or other medium cannot be reviewed or accessed outside of the medium or without software or equipment, the term document also includes all equipment or software necessary to access, review, translate or reproduce the requested information.

    B.    As used herein, the word "produce" shall mean to make available the documents requested herein for inspection and copying and to separate such documents into the categories set forth in this request.  If you decline to produce any documents requested hereinafter on the basis of any asserted privilege, you shall, in your final response hereto, provide Defendant with the following written information pertaining to such document:

      (i)        its date or, if not dated, the date it was prepared or received;

      (ii)       the type of document (e.g., letter, memorandum, telegram, photograph, reproduction);

      (iii)      its author and addressee;

      (iv)      its present location;

      (v)       the identity of the individual or persons presently custodian or

custodians thereof;

(vi)     a general description of its contents;

(vii)    the number of pages thereof;

(viii)   the identity of each person who received a copy of the document and the relationship of such person to you;

(ix)     whether such document contains or relates to facts or opinions, or both;

(x)      the nature of the privilege (e.g., work product, attorney-client) that you claim with respect to such document.

C.     As used herein, "Defendant," "Centurion," "Centurion, LLC" means Defendant Centurion, LLC, as well as its directors, officers, employees, agents, principals and parent, subsidiary, predecessor, successors, affiliated or related corporations or business units of such entity.

D.     As used herein, "Plaintiff" or "Ladele" means Gregory A. Ladele, as well as his attorneys and agents, and all persons acting on her behalf.

E.     Whenever possible, the original document shall be produced. Where drafts or copies exist that are not identical to the original documents, including those with notations or marginalia, those drafts or copies shall also be produced.

## DOCUMENTS TO BE PRODUCED

1.     All documents which support, or which you believe tend to support, the allegations that Plaintiff "was terminated because of his protected whistleblower activity, his race (African American), his age (under 40) and because of reporting discrimination and being the victim of retaliation thereafter," as alleged in Paragraph No. 52 of the Complaint.

2.     All documents which support, or which you believe tend to support, the assertion set forth in Paragraph No. 13 of the Complaint that "Dr. Ladele repeatedly complained and raised questions and concerns about the level of staffing at RMC; the quality of care being provided by Defendant's staff; as well as how Defendant's practices,

policies, and procedures (or its failure to follow them) affected the quality of care delivered to inmates. Dr. Ladele also raised concerns about Defendant's compliance with the various industry and governmental standards, rules, and regulations governing the delivery of such care, including numerous statutes and regulations concerning health care facilities management and standards for the delivery of care under the jurisdiction of, or promulgated by, Florida's Agency for Healthcare Administration and the Florida Department of Health."

3.     All documents which support, or which you believe tend to support, Plaintiff "raised concerns to senior management about the performance of HAS Priscilla Roberts, a woman known to have used racial slurs against RMC employees in the past... Specifically, Roberts had called someone a "ghetto nigger" and Plaintiff voiced his opinion and opposition to her racial treatment of other staff and the unjust/unequal treatment of minorities in the workplace" as alleged in Paragraph No. 20 of the Complaint.

4.     All documents which support, or which you believe tend to support, Plaintiff's allegations that he "raised concerns about [ ] failed audits with Director of Operations Tamara Taylor, Dr. Cherry, and other members of Defendant's senior management. However, Dr. Ladele's concerns were consistently ignored" as described in Paragraph No. 21 of the Complaint.

5.     All documents which support, or which you believe tend to support, regarding Plaintiff's reporting on the stocking of crash carts referenced in Paragraph Nos. 27-29 of the Complaint.

6.     All documents which support, or which you believe tend to support, Plaintiff's allegation in Paragraph No. 31 of the Complaint that his "race, age, and the

complaints and concerns he raised about racism and how Defendant's mismanagement negatively affected patient care and legal compliance resulted in being subjected to inferior and differential treatment compared to older, Caucasian colleagues and co-workers who had not engaged in protected whistleblower activity."

7.      All documents which support, or which you believe tend to support, Plaintiff's alleged "unfair treatment" as described in Paragraph No. 32 of the Complaint.

8.      All documents which support, or which you believe tend to support, Plaintiff's allegation that the "concerns and complaints of Dr. Ladele raised regarding the standard of care being observed by Defendant and its employees also led to Dr. Ladele receiving inferior, differential treatment in comparison to colleagues and co-workers who raised no similar complaints," as described in Paragraph No. 14 of the Complaint.

9.      All documents which support, or which you believe tend to support, Plaintiff's allegation that the "complaints and concerns Dr. Ladele raised were about Defendant's delivery and quality of care to inmates not meeting the standard of care required under these circumstances" as described in Paragraph No. 15 of the Complaint.

10.     All documents which support, or which you believe tend to support, Plaintiff's allegation in Paragraph No. 32 of the Complaint that "Defendant requiring Dr. Ladele to punch a time clock was neither a justified nor reasonable expectation."

11.     All documents which support, or which you believe tend to support, Plaintiff's allegation in Paragraph No. 34 of the Complaint that he was "frequently forced by Dr. Cherry to be 'on-call' by telephone during significant portions of his paid annual leave (often all night)."

12.     All documents which support, or which you believe tend to support, Plaintiff's allegation that "Dr. Cherry warned Dr. Ladele that his emails 'may not go over well' with senior Centurion management and that Dr. Ladele should be especially careful since he was 'the highest paid Regional Medical Director company-wide,'" as alleged in Paragraph No. 19 of the Complaint.

13.     The complete email chain between Plaintiff, Dr. Cherry, and Dr. Keller, and Ms. Love on or about January 31, 2017, as described in Paragraph No. 16 of the Complaint.

14.     The complete email chain from March 30, 2017, as referenced in Paragraph No. 17 of the Complaint, and any drafts, forwards or replies to the same.

15.     All documents which support, or which you believe tend to support, Plaintiff's allegations that "Ladele placed calls – usually several a day – to RMC's lab... on August 20, 21, 23, 24, and 25, 2017" as described in Paragraph No. 47 of the Complaint."

16.     All correspondence with Dr. Keller, including "documents and voicemails illustrating the lack of support he received from Dr. Cherry and Victoria Love..." as described in Paragraph No. 30 of the Complaint.

17.     All documents and correspondence pertaining to "Patient C.H." as described in Paragraph No. 38 of the Complaint.

18.     All documents which support, or which you believe tend to support, President Love's writing indicating "that Dr. Ladele had never been disciplined, never placed on probation, and never investigated for any matter" as described in Paragraph No. 52 of the Complaint.

6

19.     All documents provided to the Equal Employment Opportunity Commission and/or the Florida Commission on Human Relations with regard to the allegations contained in the Complaint.

20.     All diaries, calendars, personal notebooks, notes, journals, photographs or other such documents kept or maintained by you from January 1, 2017 to the date of your response hereto, including but not limited to documents which may be used by you to recall any events relating to the allegations set forth in the Complaint.

21.     To the extent not otherwise produced, all documents relating to your employment with Defendant, including any documentation that you removed from Defendant during your employment.

22.     To the extent not otherwise produced, all documents which may be used by you to recall any events relating to any of the allegations in the Complaint.

23.     All documents that support the claims for damages sought in the Complaint.

24.     All documents related to your efforts to mitigate the damages that you have allegedly suffered.

25.     All applications for employment that you've submitted since your employment with Defendant terminated.

26.     All written, recorded or transcribed statements or affidavits from any witnesses who claim to have knowledge of any of the allegations in the Complaint.

27.     All documents reflecting any communications or correspondence between you and any present or former employee or agent of Defendant on or after August 31, 2017 through the date of your response hereto.

28.   All text messages, emails, phone logs between you and any current or former employee of Defendant that relate to your employment with Defendant.

29.   All text messages, emails, phone logs between you and any current or former employee of the Florida Department of Corrections that relate to your employment with Defendant.

30.   All documents identified, described, listed, referred to, consulted or used to respond to Defendant's First Set of Interrogatories to Plaintiff.

31.   Your complete federal income tax returns, including W-2 and 1099 forms and any other schedules and attachments, for calendar years 2017, and 2018.

32.   Produce a fully executed unemployment compensation records release form, which is attached hereto for your signature. Complete and attach the form to your response.

33.   Produce a fully executed medical release form, which is attached hereto for your signature. Complete and attach the form to your response.

34.   Any documents not requested in the foregoing paragraphs, which support, or which you believe tend to support, any of the allegations contained in the Complaint.

Respectfully submitted,

/s/Cayla M. Page
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email: mccrear@gtlaw.com
Catherine H. Molloy
Florida Bar No. 33500
Email: molloyk@gtlaw.com
Cayla M. Page
Florida Bar No. 1003487
Email: pagec@gtlaw.com
GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard, Suite 1900

Tampa, Florida 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 21, 2019 I served the foregoing by U.S.

Mail and a copy by electronic mail to:

Marie A. Mattox, Esq.
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, Florida 32301
Marie@mattoxlaw.com

/s/Cayla M. Page
Attorney

9

## AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION

**PATIENT NAME:   Gregory A. Ladele**          **DATE OF BIRTH:** _____

This will authorize _____to release any and all medical records, including but not limited to patient charts, notes, correspondence, memoranda, handwritten or typewritten notes, audio or video tape recordings, psychiatric or psychological evaluations, counseling records, examination or test results, and billing or payment information or authorizations, relating or pertaining to **Gregory A. Ladele**, Social Security Number, _____: to

> Catherine H. Molloy
> Greenberg Traurig, P.A.
> 101 E. Kennedy Blvd., Suite 1900
> Tampa, Florida 33602
> (813) 318-5700

The released information may be used solely for purposes of litigation in the *Gregory A. Ladele, D.O. v. Centurion Managed Care of Florida, LLC d/b/a Centurion, LLC,* Case No. 19-CA-001511. This authorization will expire at the end of the litigation in the above-referenced case.

### PATIENT'S STATEMENT OF RIGHTS

I understand that pursuant to the HIPAA Privacy Rule I have the right to revoke this authorization by providing written notice to _____ and to Greenberg Traurig. I further understand that if the notice is revoked prior to termination of the litigation, my records may be subject to subpoena by any other party in the litigation.

_____          _____
**Gregory A. Ladele**                                    **Date**

Sworn to and Subscribed Before Me

this _____ day of _____, 2019

_____
Notary Public
My Commission Expires:

*ACTIVE 44808597v1*

**AGENCY FOR WORKFORCE INNOVATION**
**AUTHORIZATION FOR RELEASE OF RECORDS**

This authorization for the release of confidential information contained in the records of the Agency for Workforce Innovation. Unless you personally applied for unemployment compensation (UC) benefits against Florida within the past year in order to release any information contained in the agency's records, this form must be notarized prior to submitting your request. Please indicate the type of information you are seeking.

**SECTION I**

☐   I applied for Florida UC benefits within the past year and have completed SECTION II and provided my signature in SECTION IV.

☐   I have not applied for Florida UC benefits within the past year. I have completed SECTION II, provided by signature in SECTION IV, and obtained the required notarization required by SECTION IV for the release of the requested information.

X   I am requesting information from your records pertaining to the individual identified in SECTION II who has authorized the release of this information to me through signature and attestation of identity required by SECTION IV below.

The information I am requesting is:
☐ Claim documents        ☐ Computer printout of current wage history        ☐ Computer printout of benefit payments
X Other (Please Specify)    All documents pertaining to the individual identified in Section II

**SECTION II**

Gregory A. Ladele _____   *Social Security Number*: _____
(First, Middle, Last)

*Address*: _____

City: _____   State: _____   Zip Code: _____   Date of Birth: _____
                                                                                                                    mm/dd/yyyy)

*Telephone*: _____

**SECTION III**

I authorize the Agency for Workforce Innovation to release all records in its possession pertaining to (*check one*) ☐ me or ☐ the individual indicated below. I understand this information may include records that reveal my identity, the amount of UC benefits received, medical records, or other evaluations including any drug test information, and/or the identity of employing units for which I have worked. If requested, the information may include the identity of the employing unit to which I was referred for employment.

**If this request involves a court case, please provide the following:**
I further authorize the Agency for Workforce Innovation and any of its employees to appear and provide oral testimony regarding my records and other information requested by subpoena, in any deposition, hearing or other proceeding relevant to Case Style: *Gregory A. Ladele, D.O. v. Centurion Managed Care of Florida, LLC d/b/a Centurion, LLC.*; Case Number: 19-CA-0011511 which is now pending in the jurisdiction In the Circuit Court of the Fourteenth Judicial Circuit in and for Washington County, Florida (Identify court/administrative body). This authorization is valid until the above styled case is concluded.

The information requested is to be provided to a party other than indicated in SECTION II; please forward the information in to:
Catherine H. Molloy, Greenberg Traurig, P.A., 101 E. Kennedy Blvd., Suite 1900, Tampa, Florida 33602 (813) 318-5700

**SECTION IV**
*Signature of person*
*Who is the subject of this request:* _____   *Date:* _____

State of Florida
County of _____

The foregoing instrument was acknowledged before me this _____ day of _____ 2015  by _____

_____
Signature

_____
(NAME OF NOTARY, TYPED, PRINTED OR STAMPED)

Personally Known _ OR Produced Identification _____

Type of Identification Produced _____

*ACTIVE 44798827v1*

Filing # 102306906 E-Filed 01/27/2020 09:21:33 PM

**IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT IN
AND FOR LEON COUNTY,
FLORIDA**

**GREGORY A. LADELE, D.O.,**          **CASE NO.: 19-CA-001511**
                                      **FL BAR NO.: 0739685**
          **Plaintiff,**

**v.**

**CENTURION MANAGED CARE OF
FLORIDA, LLC. D/B/A
CENTURION, LLC,**

          **Defendant.**
_____/

## PLAINTIFF'S MOTION FOR EXTENSION OF TIME
## TO FILE AMENDED COMPLAINT IN RESPONSE TO DEFENDANT'S MOTION TO
## DISMISS, OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

Plaintiff, GREGORY A. LADELE, D.O., through his counsel pursuant to Rule 1.190, Fla.R.Civ.P., and files this Motion for Extension of Time to File an Amended Complaint and states the following in support thereof:

1.      On September 19, 2019, Plaintiff a Motion to Dismiss or, in the Alternative, for a More Definite Statement.

2.      On October 16, 2019, this Court reserved ten (10) minutes to hear Defendant's Motion on January 16, 2020 at 10:00 a.m.

2

3.      On January 14, 2020, after the parties conferred and agreed that Plaintiff would file an Amended Complaint no later than January 27, 2020, the Defendant filed a Notice of Cancellation of the hearing.

4.      Plaintiff intends to address the issues raised by Defendant in its pending Motion with an Amended Complaint.   However, due to unanticipated medical issue and resulting hospitalization of the undersigned who was responsible for preparing the Amended Complaint, the Amended Complaint could not be filed by the agreed upon deadline of January 27, 2020.   Per physician's orders, the undersigned remains on medical leave with an anticipated date to return to work on Wednesday, January 29, 2020.   Through this Motion, Plaintiff is requesting that he be permitted a four (4) day extension up to and including January 31, 2020 to file an Amended Complaint.

5.      This Motion is not filed for the purpose of delay but is filed in good faith based on the representations made above.

6.      Plaintiff's Counsel attempted to contact Attorneys for Defendant without success; however, additional efforts will be made on January 28, 2020.

WHEREFORE, Plaintiff respectfully requests that he be permitted to respond to Defendant's pending Motion to Dismiss or, in the Alternative, for a More Definite Statement, up to and including January 31, 2020, all for the reasons set forth more fully above.

Respectfully submitted,

/s/ Farnita Saunders Hill
Farnita Saunders Hill [FBN 1012158]
MARIE A. MATTOX, P. A.
203 North Gadsden Street

3

Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was conveyed via the e-file portal to all counsel of record this 27th day of January 2020.

/s/ Farnita Saunders Hill
Farnita Saunders Hill

Filing # 102600134 E-Filed 01/31/2020 10:58:04 PM

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT IN AND
FOR LEON COUNTY, FLORIDA

**GREGORY A. LADELE, D.O.,**

   **Plaintiff,**

v.

**MHM HEALTH PROFESSIONALS,
LLC f/k/a MHM HEALTH
PROFESSIONALS, INC.**


   **Defendant.**
_____/

**CASE NO.: 19-CA-001511**
**FL BAR NO.: 0739685**

## AMENDED COMPLAINT

  Plaintiff, GREGORY A. LADELE, D.O. ("Dr. Ladele"), hereby sues Defendants, MHM

HEALTH PROFESSIONALS f/k/a MHM HEALTH PROFESSIONALS, INC.  ("MHMHP"),

and alleges:

### NATURE OF THE ACTION

  1. This is an action for whistleblower discrimination and retaliation brought pursuant to

§448.101 et. seq, Florida Statutes and race and age discrimination and retaliation brought pursuant

to Chapter 760, Florida Statutes.

  2. This action involves claims which are, individually, in excess of Thirty Thousand

Dollars ($35,000.00), exclusive of costs and interest.

### PARTIES

  3. Dr. Ladele, is an African American male who, at all relevant times, was under 40

years old. He is an osteopathic physician who has been practicing general medicine in Florida since

1

2013. He is thus <u>sui juris</u>.

4.      Defendant is a private, for-profit health care provider that specializes in providing health care services in jail and prison settings. It is a Delaware corporation with its principal place of business in Vienna, Virginia. At all relevant times, Defendant conducted business in Leon County, Florida in conjunction and coordination with "Centene," "Centurion, LLC" or "Centurion Florida," under a contract with the Florida Department of Corrections ("DOC") to provide health care to inmates at DOC's Main Reception and Medical Center ("RMC") in Lake Butler, Florida. At all relevant times, Defendant was authorized to conduct business under the laws of the state of Florida and was subject to the provisions of the statutes enumerated herein. At all relevant times, Defendant was Dr. Ladele's employer as that term is defined in the statutory provisions cited herein.

## CONDITIONS PRECEDENT

5.      Plaintiff has satisfied all conditions precedent to bringing this action in that, on or around October 20, 2017, Plaintiff filed a charge of discrimination with the Florida Commission on Human Relations and with the EEOC.

## STATEMENT OF ULTIMATE FACTS

6.      In July 2014, Dr. Ladele was first hired by a company called Corizon, LLC ("Corizon") to work under a contract with DOC as Chief Health Officer at a DOC facility in Chipley, Florida.

7.      In August 2015, Corizon promoted Dr. Ladele to the position of Associate Regional Medical Director for some of the medical facilities it operates at RMC (a large prison-medical complex).

8.      Plaintiff's duties and responsibilities as Medical Director at RMC included, among other things, managing the staff and operations of a 120-bed hospital for inmates; a 24-hour urgent

2

care clinic; cancer, dialysis, and surgical centers; and a radiology/imaging department.

9.      In May 2016, Centurion "bought out," or otherwise took over Corizon's contract with DOC for the operation of medical facilities at RMC. Upon information and belief, Centurion and MHM established a partnership with MHM becoming the human resources/hiring entity to provide medical services. According to MHM's website, "MHM partnered with Centene Corporation to create Centurion....the next generation of correctional healthcare. Centurion combines technology, innovation, and sound clinical services to provide an efficient, yet clinically effective medical service program for inmate populations. Centurion provides medical services to correctional systems in Arizona, New Hampshire, Minnesota, Tennessee, Vermont, Mississippi, Florida, and New Mexico."

10.     MHM's website further states, "MHM provides behavioral health, medical and dental specialty services to governmental agencies in a wide variety of patient care settings, including correctional facilities, state hospitals, courts, juvenile facilities and community clinics. MHM Services and its subsidiaries serve clients in 16 states across the country."

11.     Defendant contends in its position statement regarding Defendant MHM HEALTH PROFESSIONALS, INC, hereinafter referred to as MHMHP, "MHMHP is a wholly owned subsidiary of MHM Services, Inc. ("MHM"). MHM and Centene Corp. formed a joint venture, Centurion, LLC ("Centurion"), which provides comprehensive health care services to state governments, including state correctional facilities. In 2016, the Florida Department of Corrections ("FDOC") awarded a contract ("the Contract") to Centurion of Florida, LLC ("Centurion of FL"), a wholly owned subsidiary of Centurion, under which Centurion of FL provides medical care for over 80,000 inmates in forty correctional facilities throughout the State of Florida. MHMHP, in turn, has a subcontract with Centurion of FL to supply the personnel to staff the Contract. In other words, MHMHP provides healthcare staff as a vendor of FDOC." Under the Centene/Centurion/MHM

3

partnership, Defendant MHM hired Dr. Ladele to continue in his position as Regional Medical Director for RMC.

12.     During Dr. Ladele's tenure with Defendant, he reported on clinical matters directly to Dr. Daniel Cherry III, Defendant's State Medical Director, a Caucasian male who at all relevant times was over 40 years old.  Employment decisions about Plaintiff's employment were made from Defendant's corporate office in Leon County, Florida.

13.     Defendant also answered, on administrative matters, to RMC Health Services Administrator ("HSA") Priscilla Roberts and Defendant's Director of Operations, Tamara Taylor, both Caucasian females who, at all relevant times were over 40 years old.

14.     After several months of employment with Defendant, Dr. Ladele was subjected by Defendant to inferior, differential treatment in comparison to his older, Caucasian colleagues.

15.     Throughout his tenure with Defendant, Dr. Ladele repeatedly reported and raised questions and concerns about the level of staffing at RMC; the quality of care being provided by Defendant's staff; as well as how Defendant's practices, policies, and procedures (or its failure to follow them) affected the quality of care delivered to inmates.  Specifically, due to the shortage of physicians and their working extremely long hours, they were subject to burnout.  Dr. Ladele set forth recommendations regarding how this issue could be addressed; however, his recommendations went unnoticed, with non-medical staff having the responsibility for scheduling.

16.     Dr. Ladele also raised concerns about Defendant's compliance with the various industry and governmental standards, rules, and regulations governing the delivery of such care, including numerous statutes and regulations concerning health care facilities management and standards for the delivery of care under the jurisdiction of, or promulgated by, Florida's Agency for Healthcare Administration and the Florida Department of Health. By way of example, the outpatient

4

clinic, directly managed by Dr. Ladele, and under the supervision Priscilla Roberts failed audits; however, these concerns seemingly went unnoticed with no action taken.

17.     The concerns and complaints Dr. Ladele raised and reported to Defendant's managerial staff and Centurion's staff regarding the standard of care being observed by Defendant and its employees also led to Dr. Ladele receiving inferior, differential treatment in comparison to colleagues and co-workers who raised no similar complaints.

18.     By way of example, In December 2016, Dr. Ladele was told he would need to start punching a timecard using a time clock. As the Regional Medical Director of RMC – a highly-paid, salaried employee with extensive management responsibilities – Defendant requiring Dr. Ladele to punch a time clock was neither a justified nor reasonable expectation. In fact, none of his older, Caucasian co-workers and colleagues, who had not engaged in protected whistleblower activity, were required to punch a time clock.

19.     When on approved vacations, Dr. Ladele was frequently forced by Dr. Cherry to be "on-call" by telephone during significant portions of his paid annual leave (often all night). Dr. Ladele was also frequently required to manage clinical problems during the day. When Dr. Ladele attempted to claim compensation or reimbursement for this time spent working on vacation, or even just for the cost of the phone calls he made while working during his vacation, he was denied compensation.

20.     Similarly situated, older, Caucasian doctors who had not engaged in protected whistleblower and other protected activities were not subject to such treatment.      `

21.     Additionally, Dr. Ladele was singled out for extra work/projects that older, Caucasian doctors who had not engaged in protected whistleblower activity were not required to complete. By way of example, Dr. Ladele participated in the filming of a public service announcement, which was

5

highly requested by Defendant [who requested].  Although Dr. Ladele agreed to perform the additional task relative to the public service announcement, it consumed a large amount of Dr. Ladele's free time. Dr. Ladele also prepared a lecture for a conference on Defendant's behalf, which took up a portion of his free time.

22.     The complaints and concerns Dr. Ladele raised and reported to Defendant's managerial staff and Centurion's staff, involved Defendant's delivery and quality of care to inmates not meeting the standard of care required under these circumstances.

23.     Specifically, on or about January 31, 2017, Dr. Ladele wrote a lengthy and detailed e-mail to, among others, Dr. Cherry (State Medical Director) and Dr. Cherry's boss, Dr. Jeff Keller, (Defendant's Chief Medical Officer) and Vicki Love (Vice President of Operations). In this e-mail, Dr. Ladele explained in detail the grave concerns he had with how short-staffed Defendant's operation at RMC had become.

24.     Dr. Ladele's January 31, 2017 email set forth and described some action items he had proactively come up with for himself to ameliorate the problems Defendant's chronic short staffing were causing him and his staff.

25.     However, Dr. Ladele's January 31, 2017 e-mail was ignored. On March 31, 2017, at 1:11 p.m., Dr. Ladele sent a follow up email to Janet Dobson, Victoria Love, Dr Cherry, Josephine Eady, and Priscilla Roberts with the Subject:  Staffing Concerns (Update). Specifically, Dr. Ladele stated, in part:

> "I would like it to be duly noted that I have forecasted some of the grave concerns with several examples (ex. decline in Quality of care of the patients and Quality of life of the providers) that will follow with this projected rotated schedule in our meeting.  I fully understand what it takes to manage difficult decisions.  For example, I worked on average 60hrs a week for six months (May 8 2017 - Nov 21 2017) without complaint nor assistance from Leadership, after I provided strong recommendations of

6

how to effectively manage UM concerns at RMC.  It took 10 months for the system to demonstrate some improvement after adhering to the recommendations made by myself and other site leadership.  I truly hope that we do not find ourselves in the same predicament, especially when this involves essential personnel, which are our Physicians.  These same physicians have worked within times of severe critical need with covering Outpatient clinics, Holidays, as well as covered Urgent Care on the weekends for at least the last year without a mere complaint.  For this, I applaud their dedication and service to the vision of RMC and to the mission of Centurion and hope for this feat to be acknowledged by Leadership.

I have provided numerous options in Jan 2017 and March 2017, which seemed to not have been explored nor addressed by Leadership.  I have indicated ways to significantly save money, which again seem to not have been acknowledged, while awaiting for Leadership to make timely decisions over a two month period to address pertinent concerns.

In closing, I would like to provide some constructive criticism to Leadership regarding the management of this site and possibly others.

26.     In the above e-mail, Dr. Ladele also described the progress he had made on the action items he had proactively assigned himself in the January 31, 2017 email.

27.     Dr. Cherry made it known to Dr. Ladele that he was not happy with Dr. Ladele sending out e-mails critical of the way Defendant was managing RMC. Specifically, Dr. Cherry warned Dr. Ladele that his e-mails "may not go over well" with senior Centurion management and that Dr. Ladele should be especially careful since he was "the highest paid Regional Medical Director company-wide."

28.     Throughout his employment with Defendant, Dr. Ladele raised concerns to senior management about the performance of HSA Priscilla Roberts, a woman known to have used racial slurs against RMC employees in the past, nearly costing Roberts her job. Specifically, Roberts had called someone a "ghetto nigger" and Plaintiff voiced his opinion and opposition to her racial treatment of other staff and the unjust/unequal treatment of minorities in the workplace.  The actions taken against Plaintiff were taken at least in part because of his opposition to racism in the workplace.

7

29.     Dr. Ladele managed the clinical staff of the Outpatient Unit.  However, the units, particularly the outpatient clinic, which was under Roberts' administration and management, consistently failed audits due to mismanagement. Dr. Ladele he raised concerns about these failed audits with Director of Operations Tamara Taylor, Dr. Cherry, and other members of Defendant's senior management. However, Dr. Ladele's concerns were consistently ignored.

30.     On July 25, 2017, one of Dr. Ladele's patients, Patient E.S., underwent an emergency psychological examination conducted by Dr. Pablo Lomangcolob. Patient E.S. was an elderly, legally blind, male with end stage renal disease, on hemodialysis, who was experiencing altered mental status.

31.     Lomangcolob determined that E.S. was a danger to others due to his biting and stabbing behaviors and verbal threats he had made. Lomangcolob suggested that, in the near term, E.S. be placed in his own hospital room and not be put back in the general population.

32.     In response to Lomangcolob's report, Dr. Ladele consulted with the Warden and Deputy Warden of RMC and with Centurion HSA Priscilla Roberts. A suggestion was made that Patient E.S. be placed in solitary confinement. Dr. Ladele advised against this out of concern for patient safety. Dr. Ladele believed he had secured assurances E.S. would be placed in a hospital bed rather than solitary confinement.

33.     Despite his belief that he had the necessary assurances, E.S. was placed in solitary confinement anyway. He died the following day, July 26, 2017, as a result of bleeding to death and after lacking proper supervision, E.S. removed the catheter which facilitated dialysis and proved to be fatal.  Dr. Ladele took all necessary measures to ensure this would not occur, but to no avail, staff failed to follow his directives and orders.

8

34.     Dr. Ladele made his unhappiness with his orders not being followed and E.S.'s outcome known to Priscilla Roberts and his supervisor, Dr. Cherry.

35.     In August 2017, Dr. Ladele elevated to Defendant's senior management concerns that were relayed to him by his clinical staff concerning the stocking of "crash carts" located in RMC medical facilities. A crash cart is a mobile toolbox containing all the drugs and instruments used to resuscitate patients who have "coded" and are in or close to cardiac arrest.

36.     Among other problems, the crash carts, which were supposed to be stocked in strict accordance with various governmental and industry-wide rules, regulations, and standards; lacked necessary, working equipment. For example, one cart lacked an Ambu-bag, (an inflatable plastic bladder attached to a facemask squeezed to forcibly deliver oxygen to a patient either not breathing or struggling to breathe).

37.     In another case, a physician had to try four laryngoscopes (a lighted scope used to feed a breathing tube through the larynx into the lungs during intubation) from different crash carts before finding a fifth that worked properly, a potentially fatal complication resulting in a critical loss of time stabilizing a patient who either could not breathe or had serious trouble breathing.

38.     On or about August 16, 2017, Dr. Ladele contacted Defendant's former Chief Medical Officer, Dr. Jeffrey Keller, to address the lack of responsiveness by Defendant's senior management to his concerns over mismanagement and the quality of patient care at RMC. He forwarded to Dr. Keller documents and voicemails illustrating the lack of support he received from Dr. Cherry and Victoria Love, Defendant's Vice President of Operations (a Caucasian female over 40) and discussed with Dr. Keller his concerns over how the mismanagement affected patient care. Dr. Keller told Dr. Ladele he would "pass along" his (Dr. Ladele's) concerns to the individuals about whom Dr. Ladele complained. Dr. Ladele had also discussed this same matter with Dr. Keller one month prior.

9

39.     As previously stated, Dr. Ladele's race, age, and the complaints and concerns he raised about racism and how Defendant's mismanagement negatively affected patient care and legal compliance resulted in his being subjected to inferior and differential treatment compared to other older, Caucasian colleagues and co-workers who had not engaged in protected whistleblower activity.   As stated earlier, Priscilla Roberts has a known history of making racial statements and having a dislike for African Americans; however, Defendant fails to take a stance to address these issues.   Moreover, other African American employees have made complaints with one employee facing a suspension after filing a complaint regarding Roberts.   Another employee resigned after voicing concerns that his license could be threatened by the means by which Defendant ignored various policies and procedures.

40.     By way of example only, shortly after Defendant hired Dr. Ladele, he asked if he could work four, ten-hour-a-day shifts every week instead of five, eight-hour shifts. Dr. Ladele had requested the shift change at least on three (3) occasions.   During a meeting in his office with Dr. Cherry and Tamara Taylor present, Dr. Ladele once again requested the four day/ten-hour shift; however Dr. Cherry specifically told Plaintiff this was not possible. However, when Dr. Chris Hadadd, an older Caucasian physician was later hired, Hadadd was allowed to work four ten-hour shifts a week, whereas Dr. Ladele was not. In fact, when Dr. Ladele complained to Dr. Cherry about this unfair treatment, Cherry responded this was the way things were going to be because "[he] said so."

41.     On or about June 9, 2017, Dr. Ladele wrote to the HSA at Suwannee Correctional Institute ("C.I."), Ms. Brandice Corbin and two other staff members, asking that she arrange the transfer of a Suwanee C.I. prisoner/patient named Patient C.H. from Suwanee C.I. to RMC so that C.H. could be evaluated for possible treatment of Hepatitis C through the administration of

specialized drugs.

42.     June 9, 2017 was the last day of work with DOC for Ms. Corbin, who assured Dr. Ladele she would forward the necessary instructions to others at Suwanee C.I. so the transfer would be arranged after her departure. This apparently never happened.

43.     Dr. Ladele followed up with the Suwannee C.I. administrative staff on June 27, 2017 inquiring about the status of his original request. His follow-up e-mail was ignored as well.

44.     On July 10, 2017, Dr. Ladele enlisted the assistance of RMC HSA Priscilla Roberts, requesting her help in facilitating the transfer of Patient C.H. from Suwannee C.I. to RMC.

45.     Patient C.H. was transferred to RMC on or about July 13, 2017.

46.     Over the course of the next month, Patient C.H. was tested and evaluated for, and then cleared to begin Hepatitis C treatment using a drug called Harvoni. Harvoni is a relatively new, reasonably well-tolerated, oral anti-viral drug that, remarkably, can permanently cure Hepatitis C in as little as twelve weeks.

47.     In August 2017, Dr. Ladele wrote orders for lab work for C.H. that were mishandled or misplaced, resulting in the labs not being done.

48.     On August 18, 2017, Dr. Ladele, realizing his ordered lab work had not been completed, re-ordered the labs and then followed up while on vacation with the lab to make sure what he ordered was properly completed. Despite his best efforts, the lab conducted the wrong test, not the one he had originally ordered.

49.     While on vacation from August 20-27, 2017, Dr. Ladele called RMC repeatedly to ensure the labs he ordered were done properly and that Patient C.H. was prescribed and received treatment with Harvoni. Despite his tenacious follow-up, this proved harder than pulling teeth because of the miscommunication and incompetence of various RMC staff who did not work directly

11

for Dr. Ladele. For example, on August 24, Ladele was notified by the pharmacy it still did not have the Harvoni prescription he had arranged the week prior.

50.     Ladele placed calls – usually several a day – to RMC's lab, pharmacy, and urgent care clinic on August 20, 21, 23, 24, and 25, 2017, trying to get Patient C.H.'s labs completed properly and get his Harvoni treatment started.

51.     Shortly after returning from his vacation, Dr. Ladele was notified that, despite all his efforts, Patient C.H. had still gone untreated.  At this point, there was apparently nothing that Dr. Ladele could say or do to get other Centurion or DOC staff not under his supervision to treat Patient C.H. in accordance with his orders.

52.     On or about August 30, 2017, Dr. Ladele was told by Tamera Taylor and Lisa Lynch, Defendant's Human Resources Department Representative, that he was being suspended because he was the subject of a complaint that neither Taylor nor Human Resources could describe to him.

53.     Despite all of Dr. Ladele's efforts to secure appropriate treatment for Patient C.H. in the face of the miscommunication, indifference, and incompetence of the staff at Suwannee C.I. and RMC, Dr. Ladele was unlawfully terminated on September 5, 2017. Despite Dr. Ladele's requests for reasons for his termination during a telephone call with Tamar Taylor and Lisa Lynch on September 5, 2017, he was never provided a reason.

54.     However, more perplexing and as a further example of disparate treatment, on or about July 31, 2017, a little over one month prior, Dr. Ladele was given an annual performance review completed by Dr. Cherry, with no mention of issues of his performance. Despite all the extra time and proactive effort Dr. Ladele exerted into his job, duties, and responsibilities, over and above what his similarly situated colleagues either volunteered or were required to invest, his review reflected he met expectations in all applicable dimensions and received a few favorable compliments

on his performance, including, in part, "Dr. Ladele routinely abides by the guiding principles; Dr. Ladele is a highly organized clinician; Provides competence guidance and management for these [job] skills; and the client [DOC] is very pleased with Dr. Ladele's responsiveness to client inquiries and requests."

55.     Moreover, after Dr. Ladele's wrongful termination, he applied for a license to practice medicine in the state of Arizona.  Without hesitation, Defendant's Regional Vice President Lisa Love indicated in writing, that Dr. Ladele had never been disciplined, never placed on probation, and never investigated for any matter.  Love made no mention of the wrongful termination or any issues with Dr. Ladele's performance during his tenure with Defendant.

56.     In fact, Defendant did not terminate Dr. Ladele for any valid reason. Dr. Ladele was terminated because of his protected whistleblower activity of issues of non-compliance, staffing issues, and inmate care, that were critical to the facility's operation but were never addressed.  Dr. Ladele was also terminated based on his race (African American) when the Defendant failed to take action against a staff member having a history of racial animus, his age (under 40), as compared to his colleagues who were in their 40, 50's and 60's, and because of reporting discrimination and being the victim of retaliation thereafter.

57.     Dr. Ladele has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for those services. Defendant should be made to pay said fee under the statutory provisions cited herein and such other grounds as are authorized by law.

## COUNT I
### PRIVATE WHISTLEBLOWER RETALIATION
### (Brought under Chapter 448.101, et. seq, Florida Statutes)

58.     Paragraphs 1-57 are re-alleged and incorporated herein by reference.

59.     This is an action for private whistleblower retaliation brought under §448.101, et seq.,

13

Fla. Stat.

60.     As set forth in greater detail above, during Dr. Ladele's employment with Defendant, he objected verbally and in writing to certain practices of Defendant, its employees, and agents which violated the applicable reasonable standard of care for the delivery of medical care in a prison hospital setting, in violation of state and federal laws, including statutes, rules, and regulations relating to or promulgated by Florida's Agency for Healthcare Administration or the Florida Department of Health, and and/or refused to participate in practices of Defendant that were in violation or suspected violation of one or more laws, rules or regulations.

61.     After Dr. Ladele's numerous objections to Defendant's and its employees' and agents' substandard practices, Defendant discriminated and retaliated against Dr. Ladele by, among other things, unlawfully terminating him, in violation of §448.101, et seq., Fla. Stat.

62.     Dr. Ladele was terminated because he objected to and/or engaged in certain protected activities. Specifically, he: disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the Defendant that is in violation of a law, rule, or regulation, and Dr. Ladele, in writing, reported the brought the activity, policy, or practice to the attention of a supervisor or the Defendant and afforded the Defendant a reasonable opportunity to correct the activity, policy, or practice; or objected to, or refused to participate in, any activity, policy, or practice of the Defendant which is in violation of a law, rule, or regulation.

63.     The disclosures and objections made by Dr. Ladele were protected under §448.102, Fla. Stat.

64.     Defendant is liable for the unlawful, discriminatory and retaliatory treatment because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial

14

action or took no action at all to prevent Dr. Ladele's unlawful treatment.

65.     Furthermore, Defendant is liable for its unlawful, discriminatory and retaliatory treatment because it controlled, allowed, and participated in the same. Defendant's known allowance and ratification of these actions and inactions created, perpetuated, and facilitated an unlawful practice within the meaning of the statutes referred to herein. In effect, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of an unlawful, discriminatory and retaliatory nature and in violation of the laws set forth herein.

66.     As a direct and proximate result of Defendant's conduct described above, Dr. Ladele has suffered past and future pecuniary losses, including lost past and future wages and benefits and interest on the same. Dr. Ladele has also suffered non-pecuniary losses, including loss of reputation, inconvenience, emotional distress, mental pain and suffering, mental anguish, and loss of enjoyment of life.  These damages have occurred in the past and are permanent and continuing. Dr. Ladele is also entitled to injunctive/equitable relief.

## COUNT II
## RACE DISCRIMINATION (under Chapter 760, Florida Statutes)

67.     Paragraphs 1-57 are re-alleged and incorporated herein by reference.

68.     This is an action for race discrimination brought under Chapter 760 Fla. Stat.

69.     As set forth in greater detail above, Defendant discriminated against Dr. Ladele by, among other things, subjecting him to inferior and differential treatment and unlawfully terminating him based on his race (African-American).

70.     Defendant is liable for Dr. Ladele's unlawful, discriminatory treatment because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial

15

action or took no action at all to prevent such unlawful treatment.

71.     Furthermore, Defendant is liable for Dr. Ladele's unlawful, discriminatory treatment because it controlled, allowed, and participated in the same. Defendant's known allowance and ratification of these actions and inactions created, perpetuated, and facilitated an unlawful practice within the meaning of the statutes referred to herein. In effect, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of an unlawful, discriminatory and retaliatory nature and in violation of the laws set forth herein.

72.     As a direct and proximate result of Defendant's conduct described above, Dr. Ladele has suffered past and future pecuniary losses, including lost past and future wages and benefits and interest on the same. Dr. Ladele has also suffered non-pecuniary losses, including loss of reputation, inconvenience, emotional distress, mental pain and suffering, mental anguish, and loss of enjoyment of life. These damages have occurred in the past and are permanent and continuing. Dr. Ladele is also entitled to injunctive/equitable relief and punitive damages.

**COUNT III**
**AGE DISCRIMINATION (Under Chapter 760, Florida Statutes)**

73.     Paragraphs 1-57 are re-alleged and incorporated herein by reference.

74.     This is an action for age discrimination.

75.     As set forth in greater detail above, Defendant discriminated against Dr. Ladele by, among other things, subjecting him to inferior and differential treatment and unlawfully terminating him based on his age (under 40), in violation of Chapter 760, Fla. Stat.

76.     Defendant is liable for Dr. Ladele's unlawful, discriminatory treatment because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial

16

action or took no action at all to prevent such unlawful treatment.

77.     Furthermore, Defendant is liable for Dr. Ladele's unlawful, discriminatory treatment because it controlled, allowed, and participated in the same. Defendant's known allowance and ratification of these actions and inactions created, perpetuated, and facilitated an unlawful practice within the meaning of the statutes referred to herein. In effect, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of an unlawful, discriminatory and retaliatory nature and in violation of the laws set forth herein.

78.     As a direct and proximate result of Defendant's conduct described above, Dr. Ladele has suffered past and future pecuniary losses, including lost past and future wages and benefits and interest on the same. Dr. Ladele has also suffered non-pecuniary losses, including loss of reputation, inconvenience, emotional distress, mental pain and suffering, mental anguish, and loss of enjoyment of life. These damages have occurred in the past and are permanent and continuing. Dr. Ladele is also entitled to injunctive/equitable relief and punitive damages.

## COUNT IV
### RETALIATION (Under Chapter 760, Florida Statutes)

79.     Paragraphs 1-57 are hereby re-alleged and reincorporated as if set forth in full herein.

80.     Defendant is an employer as that term is used under the applicable statutes referenced above.

81.     The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting him under Chapter 760, Florida Statutes.

82.     The foregoing unlawful actions by Defendant were purposeful.

17

83.     Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and was the victim of retaliation thereafter, as related in part above. The events set forth herein led, at least in part, to Plaintiff's termination.

84.     Plaintiff is a member of a protected class because he reported unlawful employment practices and was the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

85.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent. Plaintiff is entitled to punitive damages and injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, Dr. Ladele demands judgment against Defendant for the following:

(a)     that process issue and this Court take jurisdiction over this case;

(b)      that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff, awarding all legally available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of the law enumerated herein;

(d)      enter judgment against Defendant and for Dr. Ladele, permanently enjoining Defendant from future violations of laws enumerated herein;

18

(e)      enter judgment against Defendant and for Dr. Ladele awarding Dr. Ladele attorney's fees and costs; award Dr. Ladele interest, including pre- and post-judgment interest, where appropriate; and

(f)      grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully Submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by e-filet to all counsel of record this 31st day of January 2020.


/s/ Marie A. Mattox
Marie A. Mattox

19